DAVID RUBENSTEIN, DC Bar #458770
*Deputy Enforcement Director*
FRANK KULBASKI, DC Bar #438917
*Assistant Deputy Enforcement Director*
RINA TUCKER HARRIS, DC Bar #444550 (*Pro Hac Vice*)
(Email: RinaTucker.Harris@cfpb.gov; Phone: 202-435-9196)
NICHOLAS JABBOUR, DC Bar #500626 (*Pro Hac Vice*)
(Email: Nicholas.Jabbour@cfpb.gov; Phone: 202-435-7508)
BRANDIS C. ANDERSON, CA Bar #261325
(Email: Brandis.Anderson@cfpb.gov; Phone: 202-435-7548)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

KENT KAWAKAMI, CA Bar #149803 – Local Counsel
(Email: Kent.Kawakami@usdoj.gov; Phone: 213-894-4858)
United States Attorney's Office
Central District of California – Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>IrvineWebWorks, Inc. d/b/a Student Loan Processing.US, *et al.*,<br><br>Defendants. | Case No. SACV14-1967-JVS (DFMx)<br><br>**PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**HON. JAMES V. SELNA**<br>**Date: January 25, 2016**<br>**Time: 1:30 PM**<br>**Place: Courtroom 10C (Santa Ana)** |

## TABLE OF CONTENTS


INDEX TO SUMMARY JUDGMENT EXHIBITS .......... 4

STATEMENT OF UNCONTROVERTED FACTS .......... 9

I. Overview Of Defendants .......... 9

A. IrvineWebWorks, Inc. d/b/a Student Loan Processing.US .......... 9

B. James Krause .......... 10

II. U.S. Department Of Education Repayment Programs .......... 11

III. Student Loan Processing.US's Student Loan Debt Relief Services .......... 12

IV. Fees For Defendants' Student Loan Debt Relief Services .......... 13

A. Upfront Enrollment Fee .......... 13

B. Recurring Monthly Maintenance Fee .......... 14

C. Other Fees .......... 14

V. Defendants' Marketing And Advertising Of Their Student Loan Debt Relief Services .......... 15

A. Overview Of Marketing Methods .......... 15

B. Direct Mail Solicitations .......... 15

C. Outbound Telemarketing .......... 17

D. Print Flyer .......... 18

E. SLP's Website .......... 19

F. Social Media Websites .......... 21

G. Newspaper Advertisements .......... 22

H. Television Advertisements .......... 23

VI. Consumers Who Enroll With Student Loan Processing.US Want Student Loan Debt Relief Services .......... 24

VII. Defendants' Enrollment Process And Advance Fee Collection .......... 26

VIII. Defendants Misrepresented An Affiliation With The U.S. Department Of Education .......... 30

A. The Mailer Implied That SLP Is Affiliated With The U.S. Department Of Education ... 32

B. SLP's Website And Social Media Webpages Implied That SLP Is Affiliated With The U.S. Department Of Education ... 33

C. SLP's Logo Implied That SLP Is Affiliated With The U.S. Department Of Education Or The Federal Government ... 35

D. Statements Made By SLP Employees During The Enrollment Call Implied That SLP Is Affiliated With The U.S. Department of Education ... 37

E. The Service Agreement Implied That SLP Is Affiliated With The U.S. Department Of Education ... 38

F. SLP Representatives Made Other Statements Implying That SLP Is Affiliated With The U.S. Department Of Education ... 39

IX. Misrepresentations Related To The Cost Of SLP's Student Loan Debt Relief Services ... 39

X. James Krause's Role In Designing, Implementing, And Overseeing The Activities Of Student Loan Processing.US ... 42

XI. Consumer Complaints ... 44

XII. Final Judgments And Orders As A Result Of Actions By State Attorneys General ... 45

CONCLUSIONS OF LAW ... 47

**INDEX TO SUMMARY JUDGMENT EXHIBITS**[1]

| SJ Ex. Number: | Abbreviation: | Refers to: |
|---|---|---|
| **Student Loan Processing.US's Advertisements And Marketing Materials** | | |
| SJ Ex. 1 | Mailer No. 1 | Direct Mailer for Student Loan Processing.US's Services |
| SJ Ex. 2 | Mailer No. 2 | Direct Mailer for Student Loan Processing.US's Services, SLP0062-63 |
| SJ Ex. 3 | SLP Current Website | Website for Student Loan Processing.US (current as of November 21, 2014) (select portions) (*see also* Nelson Decl. Exhibit A) |
| SJ Ex. 4 | SLP Prior Website | Prior Website for Student Loan Processing.US (select portions) (*see also* Nelson Decl. Exhibit B) |
| SJ Ex. 5 | Flyer | Print Flyer for Student Loan Processing.US's Services, SLP0060-61 |
| SJ Ex. 6 | News Ad No. 1 | Newspaper Advertisement for Student Loan Processing.US's Services (2014) |
| SJ Ex. 7 | News Ad No. 2 | Newspaper Advertisement for Student Loan Processing.US's Services (2014) |
| **Student Loan Processing.US's Social Media Websites** | | |
| SJ Ex. 8 | SLP Tumblr | Student Loan Processing.US's Tumblr Webpage (current as of July 29, 2013), SLP0069-86, SLP0090 |
| SJ Ex. 9 | SLP LinkedIn | Student Loan Processing.US's LinkedIn Webpage (current as of July 29, 2013), SLP0064-65 |
| SJ Ex. 10 | SLP Yelp | Student Loan Processing.US's Yelp Webpage (current as of July 26, 2013), SLP0091-92 |
| **Student Loan Processing.US's Scripts** | | |
| SJ Ex. 11 | Inbound Call Script No. 1 | Student Loan Processing.US's Inbound Call Script (version 1), SLP0097-100 |
| SJ Ex. 12 | Inbound Call Script No. 2 | Student Loan Processing.US's Inbound Call Script (version 2) |
| SJ Ex. 13 | Inbound Call Script No. 3 | Student Loan Processing.US's Inbound Call Script (version 3; current version) |

[1] All summary judgment exhibits are authenticated in the declarations of John Nelson (SJ Ex. 41) and Nicholas Jabbour (SJ Ex. 42).

| | | |
|---|---|---|
| SJ Ex. 14 | Online Inbound Call Script | Student Loan Processing.US's Inbound Call Script (*see also* Nelson Decl. Exhibit C) |
| SJ Ex. 15 | Coordinator Script | Student Loan Processing.US's Coordinator Transfer Script, SLP0096 |
| SJ Ex. 16 | Dialer Script | Student Loan Processing.US's Dialer Simple Script, SLP0094 |
| SJ Ex. 17 | Specialist Script | Student Loan Processing.US's Specialist Script, SLP0095 |
| SJ Ex. 18 | Voicemail Script | Student Loan Processing.US's Voicemail Script, SLP0093 |
| **Other Documents** | | |
| SJ Ex. 19 | Client List | Spreadsheet of Student Loan Processing.US's List of Clients (as of December 2, 2015) (redacted for privacy protection of consumers) |
| SJ Ex. 20 | Ref. Source | Referral Source for SLP Clients (as of August 2013) |
| SJ Ex. 21 | Current Svs. Agmt. | Student Loan Processing.US's Current Service Agreement (including Client Verification Page) |
| SJ Ex. 22 | Prior Svs. Agmt. | Student Loan Processing.US's Prior Service Agreement (including Client Verification Page) |
| SJ Ex. 23 | ED Letter | Letter dated August 27, 2012 from Tracey Sasser (U.S. Department of Education) to James Krause; subject line: "Use of a Misleading Seal and Misrepresentations on Student Loan Processing.US Website" |
| SJ Ex. 24 | SLP Response to ED | Letter dated September 13, 2012 from James Krause to Tracey Sasser (U.S. Department of Education) |
| SJ Ex. 25 | IDR Plans | Federal Student Aid, U.S. Department of Education, "Income-Driven Repayment Plans for Federal Student Loans," *available at:* https://studentaid.ed.gov/sa/sites/default/files/income-driven-repayment.pdf (last accessed Dec. 28, 2015) |
| SJ Ex. 26 | IDR Request | Federal Student Aid, U.S. Department of Education, "Income-Driven Repayment Plan Request," *available at*: https://studentloans.gov/myDirectLoan/whatYouNeed.action?page=ibr (last accessed Dec. 28, 2015). |

| | | |
|---|---|---|
| SJ Ex. 27 | Cons. Request | Federal Student Aid, U.S. Department of Education, "Complete Federal Direct Consolidation Loan Application and Promissory Note," *available at*: https://studentloans.gov/myDirectLoan/whatYouNeed.action?page=loanConsol (last accessed Dec. 28, 2015) |
| SJ Ex. 28 | DBA Stmt. | Fictitious Business Name Statement, filed on May 19, 2011 with the Office of the County Clerk-Record in Orange County, California |
| **Discovery Responses** | | |
| SJ Ex. 29 | Krause RFA | Defendant IrvineWebWorks, Inc. d/b/a Student Loan Processing.US's Responses to Plaintiff's First Request for Production of Documents, dated November 9, 2015 |
| SJ Ex. 30 | SLP Interrog. I | Defendant IrvineWebWorks, Inc. d/b/a Student Loan Processing.US's Response to Plaintiff's First Request for Interrogatories |
| **Responses To Civil Investigative Demands** | | |
| SJ Ex. 31 | SLP Interrog. II | Defendant IrvineWebWorks, Inc. d/b/a Student Loan Processing.US's response to Interrogatories from the Plaintiff's Civil Investigative Demand issued on September 30, 2013 |
| SJ Ex. 32 | SLP Interrog. III | IrvineWebWorks, Inc. d/b/a Student Loan Processing.US response to Interrogatory Nos. 3, 4 and 6 from WAAG's Civil Investigative Demand issued on October 15, 2014 (*see also* Nelson Decl. Exhibit E) |
| **Investigational Hearing Testimony** | | |
| SJ Ex. 33 | Krause IH | Investigational Hearing of James Krause, taken by Plaintiff on August 27, 2013 (excerpts) |
| SJ Ex. 34 | Pestritto IH | Investigational Hearing of Adam Pestritto, taken by Plaintiff on January 15, 2014 (excerpts) |
| **Depositions** | | |
| SJ Ex. 35 | Gill Dep. | Deposition of Thomas Gill, taken by Plaintiff on November 18, 2015 (excerpts) |
| SJ Ex. 36 | Esquibel Dep. | Deposition of Steven Esquibel, taken by Plaintiff on November 23, 2015 (excerpts) |

| | | |
|---|---|---|
| SJ Ex. 37 | SLP Dep. | 30(b)(6) Deposition of IrvineWebWorks, Inc. d/b/a Student Loan Processing.US, taken by Plaintiff on November 23, 2015 (Designated Witness: James Krause) (excerpts) |
| SJ Ex. 38 | Saavedra Dep. | Deposition of Stephen Saavedra, taken by Plaintiff on December 7, 2015 (excerpts) |
| SJ Ex. 39 | Saavedra Dep., Ex. 31 | Exhibit 31 of Stephen Saavedra Deposition |
| **Declarations Concerning Exhibits** | | |
| SJ Ex. 40 | Albanese Decl. | Declaration of Christopher Albanese (with Attachment) |
| SJ Ex. 41 | Nelson Decl. | Declaration of John Nelson (with Attachments) |
| SJ Ex. 42 | Jabbour Decl. | Declaration of Nicholas Jabbour |
| **Judgments And Orders** | | |
| SJ Ex. 43 | WAAG Complaint | Complaint, *State of Washington v. IrvineWebWorks, Inc. d/b/a Student Loan Processing.US and James Krause*, No. 15-2-08325-2 SEA, filed on April 6, 2015 |
| SJ Ex. 44 | WAAG Judgment | Stipulated Findings of Fact, Conclusions of Law and Judgment, *State of Washington v. IrvineWebWorks, Inc. d/b/a Student Loan Processing.US and James Krause*, No. 15-2-08325-2 SEA, issued on November 9, 2015 |
| SJ Ex. 45 | MAAG AOD | Massachusetts Attorney General Assurance of Discontinuance (AOD) Pursuant to M.G.L. Chapter 93A, § 5, *In the Matter of IrvineWebWorks, Inc. d/b/a Student Loan Processing.US*, filed on November 9, 2015 |
| **Consumer Declarations** | | |
| SJ Ex. 46 | Kletzka Decl. | Declaration of Nicole Kletzka |
| SJ Ex. 47 | Latus Decl. | Declaration of Jared Latus |
| SJ Ex. 48 | Bethea Decl. | Declaration of Mica Bethea |

| | | |
|---|---|---|
| SJ Ex. 49 | Anderson Decl. | Declaration of Laura Anderson |
| SJ Ex. 50 | Gomez Decl. | Declaration of Sandra Gomez |
| SJ Ex. 51 | Chang Decl. | Declaration of Garett Chang |

Pursuant to Local Rule 56-1, Plaintiff Consumer Financial Protection Bureau ("Bureau"), as the moving party on the motion for summary judgement referred to in the Notice filed herewith, respectfully submits this Statement of Uncontroverted Facts and Conclusions of Law.

## STATEMENT OF UNCONTROVERTED FACTS

| | Uncontroverted Fact ("UF") | Citation[2] |
|---|---|---|
| | **I. Overview Of Defendants** | |
| | **A. IrvineWebWorks, Inc. d/b/a Student Loan Processing.US** | |
| 1. | IrvineWebWorks, Inc., a website hosting company, was formed and incorporated by James Krause ("Krause") on June 3, 2002. | SJ Ex. 33 (Krause IH) at 357-58; SJ Ex. 32 (SLP Interrog. III) at 346 |
| 2. | On May 19, 2011, on behalf of IrvineWebWorks, Inc., Krause filed a Fictitious Business Name Statement in the name of "Student Loan Processing.US." | SJ Ex. 26 (DBA Stmt.) at 321-23; SJ Ex. 33 (Krause IH) at 356-57; SJ Ex. 32 (SLP Interrog. III) at 346 |
| 3. | Krause, on behalf of IrvineWebWorks, Inc., also registered an Additional Fictitious Business Name in the name of "DOE Student Loan Processing.US" on the same day, May 19, 2011. | SJ Ex. 26 (DBA Stmt.) at 322 |
| 4. | IrvineWebWorks, Inc. d/b/a Student Loan Processing.US ("Student Loan Processing.US" or "SLP") is a California corporation headquartered at 42 South Peak Drive in Laguna Nigel, CA. | Answer of Defendant IrvineWebWorks, Inc., filed on March 12, 2015, Dkt. No. 18 ("SLP Answer") ¶ 4; Answer of Defendant James Krause, filed on March 12, 2015, Dkt. No. 19 ("Krause Answer") ¶ 4 |
| 5. | Student Loan Processing.US's principal | SJ Ex. 37 (SLP Dep.) at 492 |

[2] The Index to Summary Judgment Exhibits, found above at page [], contains an explanation of abbreviations.

| | | |
|---|---|---|
| | place of business is located at 14651 North Dallas Parkway, Suite #814, in Dallas, Texas. | |
| 6. | Student Loan Processing.US has had an office location in Dallas, Texas since November 2012. | SJ Ex. 33 (Krause IH) at 360-61 |
| 7. | Through November 2014, Student Loan Processing.US also had an office located at 25081 Commerce Center, Suite #250, in Lake Forest, California. | SJ Ex. 33 (Krause IH) at 355; SJ Ex. 37 (SLP Dep.) at 491-92 |
| | **B. James Krause** | |
| 8. | Krause is the founder and president of IrvineWebWorks, Inc. | SJ Ex. 33 (Krause IH) at 358 |
| 9. | Since 2011, Krause has owned 100% of the equity in IrvineWebWorks, Inc. | SJ Ex. 29 (Krause RFA) at 327; SJ Ex. 33 (Krause IH) at 371 |
| 10. | Since 2011, Krause has been charged with managerial responsibility for IrvineWebWorks, Inc. | SJ Ex. 29 (Krause RFA) at 327 |
| 11. | Krause oversees the operation and administration of IrvineWebWorks, Inc., including, but not limited to, the design, sales, marketing, operation, and administration of its student loan services. | SJ Ex. 29 (Krause RFA) at 328 |
| 12. | Krause is the founder, president, and sole owner of Student Loan Processing.US. | SLP Answer ¶ 5; Krause Answer ¶ 5; SJ Ex. 33 (Krause IH) at 356-57 |
| 13. | Krause has been the president of Student Loan Processing.US since May 2011, when the "Doing Business As" was filed. | SJ Ex. 33 (Krause IH) at 356 |
| 14. | As the president of Student Loan Processing.US, Krause is generally familiar with all the operations of SLP. | SJ Ex. 33 (Krause IH) at 357; SJ Ex. 30 (SLP Interrog. I) at 331-32 |
| 15. | Krause has substantial managerial responsibility for and daily control over the operations of Student Loan Processing.US, including sales, onboarding, training, communications, | SLP Answer ¶ 5; Krause Answer ¶ 5 |

| | | |
|---|---|---|
| | compliance, as well as Student Loan Processing.US's policies and procedures. | |
| | **II. U.S. Department Of Education Repayment Programs** | |
| 16. | The U.S. Department of Education ("ED")[3] offers various repayment plans to eligible borrowers with Federal student loans, which are designed to help borrowers manage their student loan debt and make repayment of student loans more affordable. The monthly amount that the borrower will pay is set at an amount that is intended to be affordable based on the borrower's income and family size. | SJ Ex. 25 (IDR Plans) at 310; SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 17. | If enrolled in an income-driven repayment plan, a borrower may become eligible for forgiveness of the remaining balance on their Federal loan, either by making 10 years of qualifying payments while employed in certain public service professions or by making 20-25 years of qualifying payments without fully repaying the loans. | SJ Ex. 25 (IDR Plans) at 312 |
| 18. | To access certain repayment plans, it is sometimes, but not always, necessary for a borrower first to combine his/her eligible Federal student loans into a Direct Consolidation Loan. | SJ Ex. 25 (IDR Plans) at 314-15 |
| 19. | Eligible borrowers can apply electronically for any income-driven repayment plan or Direct Consolidation | SJ Ex. 25 (IDR Plans) at 315; SLP Answer ¶ 6; Krause Answer ¶ 6 |

[3] Some materials used by Student Loan Processing.US, including the Service Agreement and certain telephone scripts, used "DOE" to refer to the U.S. Department of Education. Except when quoting from an SLP document, we have used "ED" throughout this statement to refer to the U.S. Department of Education, which is the preferred abbreviation to avoid confusion with the U.S. Department of Energy.

| | | |
|---|---|---|
| | Loan through ED's website at www.StudentLoans.gov or by mailing a completed paper application to ED. | |
| 20. | ED does not charge borrowers any fee to apply for any repayment plan or Direct Consolidation Loan. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 21. | The repayment program application and the application for a Direct Consolidation Loan separately require approximately 30 minutes each to complete. | SJ Ex. 26 (IDR Request) at 317; SJ Ex. 27 (Cons. Request) at 319 |
| **III. Student Loan Processing.US's Student Loan Debt Relief Services** | | |
| 22. | Since at least July 2011, Student Loan Processing.US has marketed and advertised for-cost services to advise and assist student loan borrowers applying for ED student loan repayment plans, including the Income-Based Repayment Program. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 23. | Student Loan Processing.US purports to be a "consultation service" that works with ED. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 24. | Student Loan Processing.US purports to offer consumers an "affordable way to make [their] Federal Student Loan debt more flexible and easy to manage." | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 25. | Student Loan Processing.US purports to "help [consumers] obtain one LOW monthly payment to save [them] thousands of dollars." | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 26. | Student Loan Processing.US purports to perform a variety of student loan debt relief services for its customers. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 27. | According to its Service Agreement, Student Loan Processing.US's services include "improving Client's Federal Student Loan repayment terms," "analyz[ing] Client's Federal Student | SJ Ex. 21 (Current Svs. Agmt) at 297; SJ Ex. 22 (Prior Svs. Agmt) at 302 |

| | | |
|---|---|---|
| | Loan debt situation" and "research[ing] potential debt restructuring options that may be available to Client." | |
| 28. | Student Loan Processing.US's products and services purport to include helping consumers identify and apply for the various ED repayment plans for which the consumer might qualify, including repayment plans that help the consumer achieve lower payments and possibly loan forgiveness for his/her Federal student loans. | SLP Answer ¶ 6; Krause Answer ¶ 6; SJ Ex. 33 (Krause IH) at 378-79 |
| 29. | Defendants' student loan debt relief services are the same regardless of whether the consumer needs to first combine his/her eligible Federal student loans into a Direct Consolidation Loan. | SJ Ex. 37 (SLP Dep.) at 494 ("Q. [D]o the services offered to . . . consumers who already had their loans consolidated into the direct consolidation loan program differ from the services you provide to your other customers? A. No. Because the service is getting them into a better plan than they are already in.") |
| **IV. Fees For Defendants' Student Loan Debt Relief Services** | | |
| **A. Upfront Enrollment Fee** | | |
| 30. | Between 2011 and early 2014, Student Loan Processing.US charged an upfront enrollment fee for its student loan debt relief services that amounted to the greater of 1% of the consumer's Federal student loan balance at the time he/she signs up for the service, or $250. | SJ Ex. 33 (Krause IH) at 380-81, 385 |
| 31. | Beginning in early 2014, Student Loan Processing.US ceased imposing a minimum enrollment fee, and instead now charges an upfront enrollment fee for its student debt relief services that amounted to 1% of the consumer's | SJ Ex. 37 (SLP Dep.) at 495-97 |

| | | |
|---|---|---|
| | Federal student loan balance at the time that the consumer signs up for the services. | |
| 32. | Between May 2011 and December 2, 2015, Defendants received $2,709,899.58 in upfront enrollment fees from consumers. | SJ Ex. 19 (SLP Client List) (the figure was calculated by totaling the column entitled, "Enrollment Fees Collected to Date.") |
| | **B. Recurring Monthly Maintenance Fee** | |
| 33. | In addition to the upfront enrollment fee, SLP also charges consumers enrolled in SLP's products and services a recurring monthly fee. | SJ Ex. 33 (Krause IH) at 380-81, 385; SJ Ex. 37 (SLP Dep.) at 495-96 |
| 34. | That "Monthly Maintenance Fee" is $39 per month, and is charged for the entire repayment term of the consumer's Federal student loan. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 35. | The $39 Monthly Maintenance Fee, however, is predicated on the consumer paying said fee via automatic debit. If the consumer does not wish to provide his/her financial institution account information for automatic debits, SLP chargesthe consumer an additional $15 per month, making the recurring monthly fee $54 per month. | SLP Answer ¶ 6; Krause Answer ¶ 6; SJ Ex. 37 (SLP Dep.) at 499 |
| 36. | Between May 2011 and December 2, 2015, Defendants received $5,153,671.16 in monthly maintenance fees from consumers. | SJ Ex. 19 (SLP Client List) (the figure was calculated by totaling the column entitled, "Monthly Maintenance Fees Collected to Date") |
| | **C. Other Fees** | |
| 37. | SLP sometimes charges consumers a $20 bounce fee if the consumer's draft or credit card is rejected. | SJ Ex. 37 (SLP Dep.) at 497 |
| 38. | The amount of the bounce fee was originally $35. In 2011, the fee was reduced to $20. | SJ Ex. 37 (SLP Dep.) at 498-99 |
| 39. | Between May 2011 and December 2, | SJ Ex. 19 (SLP Client List) |

| | | |
|---|---|---|
| | 2015, Defendants received $131,667.61 in bounce fees and other fees from consumers. | (the figure was calculated by totaling the column entitled, "Late Fees Collected to Date") |
| | **V. Defendants' Marketing And Advertising Of Their Student Loan Debt Relief Services** | |
| | **A. Overview Of Marketing Methods** | |
| 40. | Defendants have used a variety of methods to solicit new consumers to enroll in Student Loan Processing.US's products and services, including direct mail, outbound and inbound telemarketing, a website, newspaper advertisements, and customer referrals. | SJ Ex. 30 (SLP Interrog. I) at 334; SJ Ex. 33 (Krause IH) at 408-10; SJ Ex. 37 (SLP Dep.) at 500-05 |
| 41. | Until early 2014, Defendants' primary method of soliciting new clients to enroll in SLP's student loan debt relief services was through a direct mailer and outbound telemarketing. | SLP Answer ¶ 7; Krause Answer ¶ 7; SJ Ex. 20 (Ref. Source) |
| | **B. Direct Mail Solicitations** | |
| 42. | The majority of consumers who have enrolled with Student Loan Processing.US have done so in response to SLP's direct mailer. | SJ Ex. 20 (Ref. Source); SJ Ex. 33 (Krause IH) at 372-73 (As of August 27, 2013, approximately 68% of SLP's business was in response to the direct mailer) |
| 43. | To identify prospective clients to contact via mailer or outbound telephone, Defendants purchased, from a third-party marketing company, 433,915 leads consisting of consumers who might have student loans. | SJ Ex. 30 (SLP Interrog. I) at 335; SJ Ex. 32 (SLP Interrog. III) at 347-48; SJ Ex. 33 (Krause IH) at 363-69; SJ Ex. 34 (Pestritto IH) at 434-35, 440-42 |
| 44. | Defendants used the leads to identify consumers throughout the United States to whom a direct mailer should be sent. | SJ Ex. 32 (SLP Interrog. III) at 347-48; SJ Ex. 33 (Krause IH) at 362; SJ Ex. 37 (SLP Dep.) at 507 |
| 45. | Beginning in July or August of 2011, Defendants used a tri-fold direct mailer to solicit consumers from the lead list to | SJ Ex. 1 (Mailer No. 1); SJ Ex. 37 (SLP Dep.) at 509-10 |

| | | |
|---|---|---|
| | enroll with Student Loan Processing.US. | |
| 46. | The direct mailer used by Student Loan Processing.US was created, in part, by Krause. | SJ Ex. 33 (Krause IH) at 364; SJ Ex. 34 (Pestritto IH) at 436-38 |
| 47. | Inside the direct tri-fold mailer, language highlighted purportedly "new" Federal student loan benefits for which the consumer was "now eligible," which included "lower monthly payments," "lower interest rates," increased monthly cash flow, and forgiveness programs, including "TOTAL FORGIVENESS in some circumstances." | SJ Ex. 1 (Mailer No. 1) at 54 |
| 48. | Language in the mailer stated that the consumer's "new payment" would be "based upon [their] current income and ability to pay!" | SJ Ex. 1 (Mailer No. 1) at 54 |
| 49. | Language in the direct mailer also posed the following question to the recipient: "Do you need to save money and free up your spending cash? . . . We can help!" | SJ Ex. 1 (Mailer No. 1) at 54 |
| 50. | Touting the "easy qualification process," language in the direct mailer directed the consumer to call Defendants' toll-free number at 1-888-364-9690 before their next payment due date to "redeem [their] federal benefits" and also urged the consumer to call "within 30 days" of receipt to receive the advertised "federal benefits." | SJ Ex. 1 (Mailer No. 1) at 54 |
| 51. | In or around September 2012, Defendants changed the format of the mailer from a tri-fold to bi-fold mailer. | SJ Ex. 37 (SLP Dep.) at 510-12 |
| 52. | At the same time Defendants changed the format of the mailer, Defendants also changed the logo used on the exterior of the mailer. | SJ Ex. 37 (SLP Dep.) at 511-12 |
| 53. | Krause made the decision to change the format and exterior of the direct mailer. | SJ Ex. 37 (SLP Dep.) at 511-12 |

| | | |
|---|---|---|
| 54. | While Defendants changed the format of the direct mailer, and changed the logo on the exterior of the mailer, Defendants did not otherwise change the contents of the mailer. | SJ Ex. 2 (Mailer No. 2); SJ Ex. 1 (Mailer No. 1); SJ Ex. 37 (SLP Dep.) at 512 |
| 55. | Accordingly, Defendants mailer used beginning in or around September 2012 included the same representations regarding the "new" Federal benefits for which the consumer was eligible, including lower monthly payments, lower interest rates, forgiveness programs, and increased monthly cash flow. | SJ Ex. 2 (Mailer No. 2) |
| **C. Outbound Telemarketing** | | |
| 56. | Defendants have also conducted outbound telemarketing calls to solicit business for SLP. | SJ Ex. 33 (Krause IH) at 375 |
| 57. | Outbound telemarketing has been another key method by which Defendants solicit new customers to enroll with Student Loan Processing.US. | SJ Ex. 20 (Ref. Source) (as of mid-2013, 953 of Student Loan Processing.US's 4319 clients enrolled with SLP through the predictive dialer, 519 enrolled with SLP through live transfer, and another 117 enrolled through "outbound call returned") |
| 58. | SLP used a predictive dialer to initiate outbound calls to consumers on the lead list that it purchased. | SJ Ex. 33 (Krause IH) at 374-75 |
| 59. | If a "live person" answered the call from the predictive dialer, the call would first be transferred to one of Student Loan Processing.US's "coordinators" before being transferred to a "student loan specialist" for enrollment with SLP. | SJ Ex. 33 (Krause IH) at 374-76 |
| 60. | The "coordinators" used scripts which were read nearly verbatim. | SJ Ex. 33 (Krause IH) at 391 |
| 61. | Most of the outbound calls began with | SJ Ex. 17 (Specialist Script); |

| | | |
|---|---|---|
| | the SLP employee stating the reason for the call, which generally referenced "New Federal Forgiveness Programs" that "could possibly lower [the consumer's] monthly payments, interest rate, [] have a large portion of [the consumer's] Federal Student Loans Forgiven," or otherwise "save [the consumer] money on [his/her] Federally Funded Student Loans." | SJ Ex. 16 (Dialer Script); SJ Ex. 15 (Coordinator Script) |
| 62. | If SLP employees were not able to reach a consumer during an outbound call, the employee sometimes left a message indicating that the call was in regards to the consumer's "Federal Student Loan and the Federal Forgiveness Programs that [the consumer has] been prequalified for." The voicemail script also directed the consumer to contact SLP "Toll Free" and provided a contact number for the borrower to schedule a "Free Consultation" to discuss how to "Lower [his/her] Monthly Payment, Lower [his/her] Interest Rate, or have a Large Portion of [his/her] Federal Student Loans Forgiven." | SJ Ex. 18 (Voicemail Script) |
| **D. Print Flyer** | | |
| 63. | For a short period of time in 2011, Defendants used a print flyer to market and advertise Defendants' student loan debt relief services. | SJ Ex. 5 (Flyer); SJ Ex. 33 (Krause IH) at 410-11 |
| 64. | The print flyer claimed that Student Loan Processing.US was "[w]orking with the Department of Education to solve [the consumer's] Student Loan Problems," including by helping the consumer "obtain a plan to make [the consumer's] Federal Student Loan Debt more flexible, and suitable to [his/her] | SJ Ex. 5 (Flyer) |

| | | |
|---|---|---|
| | current financial situation, saving [him/her] *thousands* of dollars!" | |
| 65. | The print flyer also claimed that SLP, with "over 10 years of experience in Federal Student Loan debt," had been "trained to work with [the borrower] to find a program that best suits [his/her] current financial situation." | SJ Ex. 5 (Flyer) |
| 66. | The "10 years of experience" mentioned in the flyer referred to the cumulative experience of the SLP employees with their own personal student loan debts and those employees' time in the student loan "business." | SJ Ex. 33 (Krause IH) at 411-12 |
| 67. | According to the flyer, some of the "benefits" of enrolling with Student Loan Processing.US included "[f]lexible repayment plans, including plans based on [the consumer's] income and family size;" "[f]orgiveness programs;" and the ability to "[r]educe [the consumer's] monthly payment and interest rate as close to zero as possible." | SJ Ex. 5 (Flyer) |
| 68. | Defendants printed approximately 500 copies of the print flyer. | SJ Ex. 33 (Krause IH) at 411 |
| 69. | Defendants did not mail the flyer, but instead handed out the flyer to consumers with student loans. | SJ Ex. 33 (Krause IH) at 411 |
| | **E. SLP's Website** | |
| 70. | Since 2011, Defendants have also operated a website to market and advertise the services of Student Loan Processing.US. | SLP Answer ¶ 6; Krause Answer ¶ 6 |
| 71. | The three active URLs used to advertise SLP's student loan debt relief services contain either an ".us" or ".org" suffix: www.studentloanprocessing.us, www.slpus.org, and www.studentloanprocessing.org. | SLP Answer ¶ 6; Krause Answer ¶ 6; SJ Ex. 33 (Krause IH) at 359-60 |

| | | |
|---|---|---|
| 72. | The current homepage of Student Loan Processing.US rotates through four different images that explain some of the services offered by SLP. Each image includes different statements such as "See how much money Student Loan Processing.US can save you today!" and "We are here to help. Our Student Loan Consultants will help you understand all of the Federal benefits you are entitled to." | SJ Ex. 3 (SLP Current Website) at 59-62 |
| 73. | A prior homepage of SLP posed the question, "Are you being crushed by your Student Loan Debt?" The homepage also included statements regarding "Debt Relief" and "Loan Forgiveness," and stated, "We provide our clients with personalized advice and guidance on the implementation of federal student debt relief." | SJ Ex. 4 (SLP Prior Website) at 66 |
| 74. | Under the "Our Services" tab on a prior version of the SLP website was a page entitled "Debt Relief Programs," with a sub-header entitled "Federal Student Loan Debt Relief Programs."<br><br>That webpage included the following statements:<br>• "In an effort to encourage public sector employment and help borrowers with the rising cost of post-secondary education, the government developed various federal student debt relief programs which, if utilized appropriately, can help recent graduates significantly reduce the cost of their student debt."<br>• "Student Loan Processing provides our clients with personalized advice and guidance on the implementation | SJ Ex. 4 (SLP Prior Website) at 67 |

| | | |
|---|---|---|
| | of federal student debt relief programs tailored to each client's current financial situation." | |
| 75. | The "Mission Statement" under the "About Us" tab on a prior version of the website stated: "We, at Student Loan Processing are dedicated to help you find financial freedom, and we give you solutions to obtain a better plan to make your Federal Student Loan Debt more convenient, flexible, and more suitable to your current financial situation, saving you thousands of dollars and years of your life in loan repayment. Our professional and courteous Student Loan Specialists work on your behalf to receive the benefits of all Federal Programs offered through the Department of Education, and are here working for YOU." | SJ Ex. 4 (SLP Prior Website) at 69 |
| | **F. Social Media Websites** | |
| 76. | Defendants also have operated several social media websites including pages and accounts on LinkedIn, Tumblr, and Yelp. | SJ Ex. 8 (SLP Tumblr); SJ Ex. 9 (SLP LinkedIn); SJ Ex. 10 (SLP Yelp) |
| 77. | The LinkedIn page for Student Loan Processing.US stated "STUDENT LOAN PROCESSING.US is a consultation service that offers an affordable way to make your Federal Student Loan debt more flexible and easy to manage. With many years of experience in Student Loan/Finance, Student Loan Processing.US was established in may [sic] 2011 to help consumers obtain repayment options that fit their needs, and even help students save thousands of dollars in loan payments." | SJ Ex. 9 (SLP LinkedIn) |

| | | |
|---|---|---|
| 78. | Student Loan Processing.US's LinkedIn page described the Company's specialties as "Student Loan forgiveness programs" and "Income-Based Repayment Options." | SJ Ex. 9 (SLP LinkedIn) |
| 79. | On the Yelp page for Student Loan Processing.US, the Company's mission is described as follows: "We, at Student Loan Processing.US are dedicated to help you find financial freedom, and we give you solutions to obtain a better plan to make your Federal Student Loan Debt more convenient, flexible, and more suitable to your current financial situation, saving you thousands of dollars and years of your life in loan repayments." | SJ Ex. 10 (SLP Yelp) |
| 80. | The "About" section of Student Loan Processing.US's Tumblr page described the Company as a "Consultation Service, that offers an affordable way to make your Federal Student Loan debt more flexible and easy to manage." | SJ Ex. 8 (SLP Tumblr) at 79 |
| 81. | Other statements on the Tumblr page for Student Loan Processing.US included the following statements: "Don't wait until its [sic] too late? Call 888.214.8751 today to find out how we can lower your monthly payments, interest rates and/or the over-all balance of your federal student loans" and "We work for you to make sure that your loans are in the most affordable and manageable repayment plan possible." | SJ Ex. 8 (SLP Tumblr) at 83, 94 |
| **G. Newspaper Advertisements** | | |
| 82. | In the summer of 2014, Defendants placed two advertisements for their student loan debt relief services in the *Dallas Star News*. | SJ Ex. 37 (SLP Dep.) at 501 |

| | | |
|---|---|---|
| 83. | The newspaper advertisements in the *Dallas Star News* ran weekly for an eight-week period. | SJ Ex. 37 (SLP Dep.) at 504-05 |
| 84. | One of the two advertisements that appeared in the *Dallas Star News* had the words "Federal Student Loans?" and "Reduce Your Monthly Payments!" in bold font at the top and center of the advertisement.<br><br>The advertisement, which included an image of SLP's second logo, also included the following statement: "SLPUS.ORG can help you lower your monthly payment. Apply for loan forgiveness and possibly have your Federal loan discharged!" and directed consumers to "Call (800) 603-2802." | SJ Ex. 6 (News Ad No. 1 ) |
| 85. | The other advertisement that appeared in the *Dallas Star News* asked the question "DO YOU HAVE FEDERAL STUDENT LOANS?" in bold font, and included the following statements: "Call and reserve your seat for SLPUS.ORG's FREE Seminar Today!" and "Learn how to reduce your monthly payments and see if you can have your Federal Student Loans Forgiven!" | SJ Ex. 7 (News Ad No. 2) |
| 86. | Fewer than 10 consumers called SLP in response to the newspaper advertisements. At least a few of these consumers enrolled with Student Loan Processing.US. | SJ Ex. 37 (SLP Dep.) at 505 |
| **H. Television Advertisement** | | |
| 87. | Around the same time that Defendants placed advertisements in the newspaper in Texas, Defendants used the services of a lead aggregator that placed ads on television regarding student loan debt | SJ Ex. 37 (SLP Dep.) at 500-01, 504; SJ Ex. 32 (SLP Interrog. III) at 347-48 |

| | | |
|---|---|---|
| | relief. | |
| 88. | The TV advertisement invited consumers with student loans who were interested in lowering their payments to call a toll-free phone number. | SJ Ex. 37 (SLP Dep.) at 503 |
| 89. | The lead aggregator gathered the contact information from individuals who responded to the TV advertisement and resold the leads to interested buyers. | SJ Ex. 37 (SLP Dep.) at 503 |
| 90. | Defendants purchased approximately 1,415 leads from the lead aggregator in 2014. | SJ Ex. 32 (SLP Interrog. III) at 347-48 |
| 91. | A few hundred consumers from the TV advertisement lead list contacted SLP, and approximately 150 of those consumers enrolled with SLP. | SJ Ex. 37 (SLP Dep.) at 505-06 |
| **VI. Consumers Who Enroll With Student Loan Processing.US Want Student Loan Debt Relief Services** | | |
| 92. | Consumers who contact Student Loan Procesing.US generally do so because they are interested in student loan debt relief services, including enrolling in programs that result in a lower monthly payment amount or loan forgiveness for their Federal student loans. | SJ Ex. 46 (Kletzka Decl.) at 1369 ("I . . . decided that I wanted to enroll my federal student loans in the Public Service Loan Forgiveness program that the Company advertised"); SJ Ex. 48 (Bethea Decl.) at 1379 ("I was drawn to SLP because it seemed like SLP . . .could help reduce my monthly student loan payments"); SJ Ex. 50 (Gomez Decl.) at 1390 ("I understood SLP . . . could help reduce my monthly student loan payments and help me obtain forgiveness of my loans"); SJ Ex. 51 (Chang Decl. ) at 1395 ("I believed that SLP could help reduce my |

| | | |
|---|---|---|
| | | monthly student loan payments”); |
| 93. | When contacting Student Loan Processing.US, some consumers reference specific statements about lower payments and forgiveness programs made in SLP’s advertisements. | SJ Ex. 37 (SLP Dep.) at 521 |
| 94. | According to Defendants, consumers who contact Student Loan Processing.US are interested in lowering their monthly payment amount or paying off their student loans as quickly as possible. | SJ Ex. 33 (Krause IH) at 381 (The goal of consumers who contact SLP is “pretty much universally to lower their month out-go”); SJ Ex. 37 (SLP Dep.) at 516-17 (“Either lower payments or pay it off as soon as possible would be about the only two that would be [our client’s] goals”); SJ Ex. 35 (Gill Dep.) at 463 (“Q. . . . [H]ave you ever been part of calls where consumers request lower monthly payments? A. Yes. Q. And how often would you say that happens, based on your experience? A. Almost every call”); SJ Ex. 38 (Saavedra Dep.) at 551 |
| 95. | Defendants estimate that 90% of SLP’s customers contacted Student Loan Processing.US seeking to get their payment as low as possible, while 10% were seeking to pay off their loans as quickly as possible. | SJ Ex. 37 (SLP Dep.) at 520 |
| 96. | Defendants cater to consumers interested in income-based repayment programs for their Federal student loans. | SJ Ex. 33 (Krause IH) at 388 (“Q. Now, are there specific customers that your company caters to? A. Caters to clients where the income-based programs are |

| | | |
|---|---|---|
| | | where we help them.”) |
| 97. | As of October 28, 2013, nearly 70% of clients who signed up with Student Loan Processing did so seeking to enroll in an income-driven repayment plan. | SJ Ex. 31 (SLP Interrog. II) at 340 (As of October 28, 2013, 2626 consumers (56%) signed up with SLP seeking to enroll in Income-Based Repayment; 703 consumers (15%) signed up with SLP seeking to enroll in Income-Contingent Repayment; and 20 consumers (0.4%) signed up with SLP to enroll in Pay As You Earn Repayment, although not all consumers successfully met the criteria for the plans.) |
| 98. | And, as of October 28, 2013, almost 29% of clients who signed up with Student Loan Processing.US did so seeking to be eligible for the Public Service Loan Forgiveness Program or the Teacher Loan Forgiveness Program. | SJ Ex. 31 (SLP Interrog. II) at 340 (As of October 28, 2013, 1355 consumers signed up with SLP to enroll in the Public Service Loan Forgiveness Program or the Teacher Loan Forgiveness Program, although not all consumers successfully met the criteria for the programs.) |
| **VII. Defendants’ Enrollment Process And Advance Fee Collection** | | |
| 99. | Enrollment for the services advertised by Student Loan Processing.US is done almost exclusively over the phone. | SJ Ex. 37 (SLP Dep.) at 513-14 |
| 100. | A few consumers have enrolled with Student Loan Processing.US enrolled in via face-to-face enrollment, but it is “very rare.” | SJ Ex. 37 (SLP Dep.) at 513-14 (“There are a handful over the years that may have come into the office, but that is very rare.”). |
| 101. | Student Loan Processing.US does not advertise or advise consumers that they | SJ Ex. 37 (SLP Dep.) at 514-15 |

| | | |
|---|---|---|
| | could enroll face-to-face. | |
| 102. | Defendants developed scripts for enrollment calls, which they first began using in the fall of 2011. | SJ Ex. 11 (SLP Inbound Script No. 1); SJ Ex. 12 (SLP Inbound Script No. 2); SJ Ex. 13 (SLP Inbound Script No. 3); SLP Online Inbound Call Script (SJ Ex. 14); SJ Ex. 33 (Krause IH) at 393-94, 397, 399-400, 402-03, 406-07 |
| 103. | The enrollment calls typically begin with staff at Student Loan Processing.US telling the consumer that he/she is "prequalified" for certain Federal student loan repayment and forgiveness programs. | SLP Answer ¶ 9; Krause Answer ¶ 9 |
| 104. | After this introduction, the call is regularly transferred to a "Student Loan Specialist." | SJ Ex. 33 (Krause IH) at 374-75 |
| 105. | After the call is transferred to the "specialist," the "specialist" is expected to probe the consumer's current financial situation and whether the consumer's student loan payment is causing any "strain on the family budget." | SJ Ex. 38 (Saavedra Dep.) at 547-48; SJ Ex. 11 (SLP Inbound Script No. 1) |
| 106. | The "specialists" are expected to consult with consumers about their student loan indebtedness situation to determine the "best program" for their specific situation. | SJ Ex. 33 (Krause IH) at 372 |
| 107. | The "goal" of the conversation between the consumer and the "specialist" is to determine the repayment plan that will result in the "lowest amount of payment" for the consumer. | SJ Ex. 33 (Krause IH) at 377-79 |
| 108. | The "specialist" then requests that the consumer provide his/her confidential 4-digit PIN information for the U.S. Department of Education's National | SLP Answer ¶ 9; Krause Answer ¶ 9; SJ Ex. 11 (SLP Inbound Script No. 1); SLP SJ Ex. 12 (SLP Inbound |

| | | |
|---|---|---|
| | Student Loan Data System, collects information about the consumer's Federal student loan balances and annual income, and then quotes the new expected Federal student loan monthly payment amount if the consumer enrolls with Student Loan Processing.US. | Script No. 2) |
| 109. | If the consumer desires to enroll with Student Loan Processing.US, the "specialist" then attempts to gather banking information from the consumer for payment of the enrollment fee, which is generally charged to the consumer's debit/credit card or bank account during the initial enrollment call. | SLP Answer (SJ Ex. 27) ¶ 10; Krause Answer (SJ Ex. 28) ¶ 10; SJ Ex. 11 (SLP Inbound Script No. 1) |
| 110. | The enrollment scripts used ask the consumer to pay the enrollment fee during the call and, at least initially, do not present any other option: "[I]n your particular case, the one time [sic] enrollment fee will be $__. You can cover that today either [with] your debit or credit card or with an automatic draft from your checking account. Which would you like to use?" | SJ Ex. 11 (SLP Inbound Script No. 1) at 107 |
| 111. | Some consumers do, in fact, pay the enrollment fee immediately in one lump sum. | SJ Ex. 33 (Krause IH) at 382-83 |
| 112. | If, however, a consumer needs to schedule payment of the enrollment fee or to break the enrollment fee into more than one payment, SLP employees are directed to ask the consumer about the frequency with which he/she is paid, as well as his/her next expected payday, in order to schedule the enrollment fee payments around those dates. | SLP Answer (SJ Ex. 27) ¶ 10; Krause Answer (SJ Ex. 28) ¶ 10; SJ Ex. 11 (SLP Inbound Script No. 1) at 108 |

| | | |
|---|---|---|
| 113. | Regardless, however, of whether the consumer pays the enrollment fee in one payment or breaks it up until multiple payments, full payment of the enrollment fee is required before Defendants mail the application for any repayment plan or the Direct Consolidation Loan to the consumer, and before Defendants prepare any U.S. Department of Education paperwork on the consumer's behalf. | SLP Answer ¶ 11; Krause Answer ¶ 11; SJ Ex. 22 (Prior Svs. Agmt) (The enrollment fee must be received before Student Loan Processing.US "will prepare the necessary initial DOE paperwork.") |
| 114. | All consumers are required to pay the full upfront enrollment fee, regardless of the services that Student Loan Processing.US performs on behalf of the consumer. | SJ Ex. 33 (Krause IH) at 386-87; SJ Ex. 35 (Gill Dep.) at 464 ("Q. Now, for a consumer who already had their loans consolidated prior to their enrollment with you, do you still collect the enrollment fee? A. The enrollment fee is just that, an enrollment cost. It's not a consolidation fee."); SJ Ex. 37 (SLP Dep.) at 494 |
| 115. | After attempting to collect the enrollment fee, the script then directs the employee to "email over the service agreement for [the consumer's] signature." | SJ Ex. 11 (SLP Inbound Script No. 1) at 107-08 |
| 116. | Sales agents at Student Loan Processing.US are instructed not to send the Service Agreement via email unless the consumer is sitting in front of a computer. | SJ Ex. 11 (SLP Inbound Script No. 1) at 108 ("Send Service Agreement and walk customer through Docusign. Never send Service Agreement if client is not in front of computer") |
| 117. | Consumers are required to execute a Service Agreement to complete enrollment with Student Loan Processing.US. | SLP Answer ¶ 12; Krause Answer ¶ 12 |

| | | |
|---|---|---|
| 118. | The scripts used by the employees of Student Loan Processing.US contemplate the consumer returning the Service Agreement while the consumer is still on the phone with the agent. | SJ Ex. 11 (SLP Inbound Script No. 1) at 108 ("After receiving Docusign back, explain what the client should be expecting") |
| 119. | The Service Agreement purports to remain in effect until the consumer's Federal student loans are "paid in full" or "discharged due to [the consumer] qualifying for a federal discharge." | SLP Answer ¶ 12; Krause Answer ¶ 12; SJ Ex. 21 (Current Svs. Agmt.); SJ Ex. 22 (Prior Svs. Agmt) at 302 |
| **VIII. Defendants Misrepresented An Affiliation With The U.S. Department Of Education** | | |
| 120. | Defendants are not currently, and have never been, affiliated with, endorsed by, or sponsored by the U.S. Department of Education. | SLP Answer ¶ 14; Krause Answer ¶ 14; SJ Ex. 33 (Krause IH) at 366 ("Q . . .[D]o you have any affiliation or relationship with the Department of Education? A. No, other than submitting files to them."); SJ Ex. 37 (SLP Dep.) at 493 ("Q. Has the company ever had any connection, relationship, or affiliation with the Department of Education? . . . A. Only that the Department of Education is who the loans are made by.") |
| 121. | Nevertheless, SLP employees have directly misrepresented to some consumers that they are agents of the U.S. Department of Education or are affiliated with that agency in some capacity. | SJ Ex. 50 (Gomez Decl.) at 1390 ("During my call with a SLP representative, I asked the representative about SLP's relationship with the Government. I was told that SLP is affiliated with the U.S. Department of Education (ED) and works with ED.") |

| | | |
|---|---|---|
| 122. | Other consumers believe that SLP employees are agents of the U.S. Department of Education or are affiliated with that agency in some capacity based on SLP's marketing materials (including the logo used by SLP) or statements made during the enrollment call. | SJ Ex. 48 (Bethea Decl.) at 1379 ("I was drawn to SLP because it seemed like SLP was affiliated with the Federal Government and could help reduce my monthly student loan payments"); SJ Ex. 47 (Latus Decl.) at 1374 ("Based on the information contained within the flyer, I thought SLP was a federal program run by the U.S. Department of Education"); SJ Ex. 51 (Chang Decl.) at 1395 ("[I]t appeared to me that SLP was affiliated with the Federal Government because the flyer had a logo that looked like it was from a Federal agency, and the flyer indicated that SLP works with the U.S. Department of Education); SJ Ex. 46 (Kletzka Decl.) at 1369 ("Based on the information contained in the mailer, particularly the ".US" at the end of the Company's name, I believed that SLP was part of the U.S. Department of Education"); SJ Ex. 49 (Anderson Decl.) at 1385 ("My review of SLP's website and the paperwork sent to me by the Company indicated to me that SLP worked with and was affiliated with ED and the federal government.") |

| | | |
|---|---|---|
| 123. | Consumers indicated that a driver of their decision to use the Company was that it had the imprimatur of the Federal Government, which gave the Company greater legitimacy than it would have otherwise had. | SJ Ex. 48 (Bethea Decl.) at 1379 ("I was drawn to SLP because it seemed like SLP was affiliated with the Federal Government and could help reduce my monthly student loan payments"). |
| 124. | Student Loan Processing.US has received inquiries from consumers "a couple times a week" about whether it is affiliated with or part of the U.S. Department of Education. | SJ Ex. 33 (Krause IH) at 426-27 |
| **A. The Mailer Implied That SLP Is Affiliated With The U.S. Department Of Education** | | |
| 125. | Beginning in July or August 2011, Defendants used a direct mailer to solicit customers, which includes on the mailer's exterior: (a) the words "Official Business" in bold font, (b) a statement that "any person who interferes with or obstructs delivery of this letter or other violates 18 United States Code 1702 et seq." could be subject to a fine or imprisonment, (c) a bald-eagle stamp, and (d) the logo of Student Loan Processing.US. | SJ Ex. 1 (Mailer No. 1); SJ Ex. 2 (Mailer No. 2); SJ Ex. 37 (SLP Dep.) at 509-10 |
| 126. | Defendants' mailer includes the words "Official Business" or a citation to the U.S. Code even though Defendants acknowledge that such language could "possibly" lead someone to believe that the mailer is from a government agency. | SJ Ex. 33 (Krause IH) at 414 ("Q. Do you think that the use of the word 'official business' or citation to the U.S. Code could lead someone to believe this [mailer] is from a government agency? A. Possibly.") |
| 127. | The interior of the mailer states that Student Loan Processing.US is a "consultation service" that "work[s] with the Department of Education" without | SJ Ex. 1 (Mailer No. 1); SJ Ex. 2 (Mailer No. 2) |

| | | |
|---|---|---|
| | any disclaimer that Defendants have no affiliation with the U.S. Department of Education. | |
| 128. | The mailer also makes statements suggesting that the borrower is "now eligible" to receive benefits from a "new law that [] passed regarding federal student loans," even though SLP has no role in that eligibility determination. | SJ Ex. 1 (Mailer No. 1); SJ Ex. 2 (Mailer No. 2); SJ Ex. 33 (Krause IH) at 415-17 |
| 129. | In addition, the mailer states that the borrower "MUST CALL THE STUDENT LOAN PROCESSING CENTER WITHIN 30 DAYS OF RECEIVING [THE] NOTICE" in order to receive his/her "federal benefits," even though there is no Federal law or regulation which requires consumers to act within that time frame, and the consumer is under no obligation to contact SLP to receive the benefits to which he/she may be entitled. | SJ Ex. 1 (Mailer No. 1); (emphasis omitted); SJ Ex. 33 (Krause IH) at 418-19 ("Q. But would you agree that a student loan debtor could receive federal benefits without ever call the Student Loan Processing center, putting aside the time frame? A. Yes.") |
| **B. SLP's Website And Social Media Webpages Implied That SLP Is Affiliated With The U.S. Department Of Education** | | |
| 130. | Until at least late August 2012, SLP's website stated that Student Loan Processing.US "work[s] together with the Department of Education!" with no disclaimer that Defendants are not, nor ever were, affiliated with ED. | SJ Ex. 23 (ED Letter); SJ Ex. 33 (Krause IH) at 392 |
| 131. | Other marketing materials, including SLP's social media pages, also made statements about SLP "working closely with" the ED, and also did not include any disclaimer. | SJ Ex. 10 (SLP Yelp) ("'Student Loan Processing.US,' [] is working closely with the Department of Education, to help graduates solve their Student Loan Debt problems.") |
| 132. | On August 27, 2012, ED sent Krause a letter regarding the use of a misleading seal and certain misrepresentations on | SJ Ex. 23 (ED Letter) |

| | | |
|---|---|---|
| | Student Loan Processing.US's website. | |
| 133. | In that letter, ED requested that SLP place a disclaimer on SLP's homepage because statements made on SLP's website without such a disclaimer could "mislead[] the public into thinking there is an exclusive relationship between SLP and the Department." | SJ Ex. 23 (ED Letter) ("[T]he Department insists that the [] disclaimer be placed on the homepage of the website."). |
| 134. | In addition, ED indicated that SLP's logo resembled ED's Official Seal, and stated that "a member of the public may easily mistake [SLP's] logo for the Department Seal or assume a relationship between the Department and SLP because of the nature of the logo." | SJ Ex. 23 (ED Letter) |
| 135. | As a result, ED requested Student Loan Processing.US to cease using its current logo and use one "that is not modeled on the Department Seal." | SJ Ex. 23 (ED Letter) |
| 136. | ED, in its August 2012 letter, also requested removal of the ".US" suffix from the name "Student Loan Processing.US" because ED stated that the name, in conjunction with the logo and statements made on SLP's website, implied a "unique connection to the federal government." | SJ Ex. 23 (ED Letter) ("Finally, the use of the name 'Student Loan Processing.US' in conjunction with the other issues raised above further implies a unique connection to the federal government. The Agency, therefore, requests that you remove the '.US" from your company's name.") |
| 137. | In a response letter dated September 13, 2012, Krause agreed to change SLP's logo and add a disclaimer on SLP's website, but did not agree to remove the ".US" from the name "Student Loan Processing.US." | SJ Ex. 24 (SLP Response to ED Letter) |
| 138. | In or around September 2012, and only after receiving the letter from ED, a non- | SJ Ex. 4 (SLP Prior Website) at 66; SJ Ex. 33 (Krause IH) |

| | | |
|---|---|---|
| | prominent disclaimer was added SLP's website homepage stating that Student Loan Processing.US is not affiliated with ED. | at 392-93 |
| **C. SLP's Logo Implied That SLP Is Affiliated With The U.S. Department Of Education Or The Federal Government** | | |
| 139. | Until approximately September 2012, the logo for Student Loan Processing.US was as displayed below: | SLP Answer ¶ 19; Krause Answer ¶19; SJ Ex. 1 (Mailer No. 1) |
| 140. | Student Loan Processing.US's logo (displayed below on the left) shared several similarities with the U.S. Department of Education seal (displayed below on the right), including the outer spherical gold border, inner spherical gold border, tree "growing" from a base, and medium blue shading between the borders with white text. | SJ Ex. 23 (ED Letter) ("SLP is using on its websites [] a logo that resembles in format and structure the fundamentals [sic] the Department's Official Seal.") |
| 141. | At least some consumers contacted ED about SLP's original logo expressing that they had mistaken SLP's logo for ED's seal and/or assumed a relationship | SJ Ex. 23 (ED Letter) ("A member of the public may easily mistake the logo for the Department Seal or |

| | | |
|---|---|---|
| | between the SLP and ED because of the similarities between the symbols. | assume a relationship between the Department and SLP because of the nature of the logo. In fact, due to this usage the Department has already received such inquiries.") |
| 142. | Around September 2012, and only after receiving the letter from ED, Defendants modified the logo of Student Loan Processing.US to appear as displayed below: | SLP Answer ¶ 21; Krause Answer ¶ 21; SJ Ex. 2 (Mailer No. 2) |
| 143. | While the tree has been removed from SLP's logo and replaced by a gold shield and two American flags, the new SLP logo still shares similarities with ED's seal, including the medium blue shading between the borders with the white text, as well as the inner and outer spherical gold border, and continues to resemble a government seal. | SJ Ex. 2 (Mailer No. 2) |
| 144. | Student Loan Processing.US's logo was used on printed materials distributed to consumers by the Defendants, including the direct mailer, as well as on the website and social media sites for Student Loan Procesing.US.<br><br>Prior to about September 2012, the logo used on the printed materials, website, | SLP Answer ¶ 20; Krause Answer ¶ 20; SJ Ex. 30 (SLP Interrog. I) at 334; SJ Ex. 22 (Prior Svs. Agmt); SJ Ex. 1 (Mailer No. 1); SJ Ex. 2 (Mailer No. 2) |

| | | |
|---|---|---|
| | and social media sites was the first logo, while afterwards, the printed materials, website, and social media sites reflected the second logo. | |
| 145. | SLP's logo was also included on the business cards of Company employees, and was combined with text which read: "Working with the Department of Education To Solve your Student Loan Problem."<br><br>The version of the business card with the original logo is displayed below:<br><br>Student<br>Loan<br>Processing<br>"Working with the Department of Education<br>To solve your Student Loan Problem" | SJ Ex. 38 (Saavedra Dep.) at 552-54 (Company executive recalled that image was used on business card but couldn't recall "where else"); SJ Ex. 39 (Saavedra Dep. Ex. 31) |
| **D. Statements Made By SLP Employees During The Enrollment Call Implied That SLP Is Affiliated With The U.S. Department of Education** | | |
| 146. | Some inbound and outbound enrollment calls began with SLP representatives telling the consumer that he/she is "prequalified" for Federal student loan forgiveness programs that can reduce his/her monthly payment and possibly lead to forgiveness, even though SLP had not done anything, at the time of that conversation, to determine if the consumer is actually qualified for the program, and Student Loan Processing.US is not in a position to "prequalify" anyone for ED repayment plans. | SJ Ex. 33 (Krause IH) at 394-96 ("Q. [I]s it accurate to say that the company has done no customer-specific research before making a call to determine if that customer is actually qualified for a Department of Education loan program? A. Right . . . ."); SJ Ex. 18 (Voicemail Script) ("I am calling in regards to your Federal Student Loans and the Federal Forgiveness Programs that you have been prequalified for.") |

| | | |
|---|---|---|
| 147. | Even if consumers are not told they are "prequalified" for certain Federal benefits, early in the enrollment call and after asking only a few background questions, SLP representatives sometimes tell consumers that they "definitely" would qualify for Federal benefits, even though SLP representatives could not say with certainty that a consumer would qualify for an ED repayment plan. | SJ Ex. 15 (Coordinator Script) ("Well Mr. Smith it definitely looks like we will be able to help you and you do qualify for Federal Benefits"); SJ Ex. 33 (Krause IH) at 402-05 |
| 148. | To verify the consumer's Federal student loan information during the enrollment call, SLP representatives ask the consumer to provide his/her confidential 4-digit pin for the U.S. Department of Educations' National Student Loan Data System ("NSLDS"). In requesting this info, however, SLP representatives state that they already "have access to the DOE's National Student Loan Database" but need the consumer to "verify [his/her] information." | SJ Ex. 11 (SLP Inbound Script No. 1) at 106; SJ Ex. 12 (SLP Inbound Script No. 2) at 111; SJ Ex. 13 (SLP Inbound Script No. 3) at 117 |
| 149. | The "access" to NSLDS that SLP employees represent to "have" is no more than public access to the NSLDS Student Access website (www.nslds.ed.gov), which they use the consumer's confidential 4-digit PIN to access. | SJ Ex. 33 (Krause IH) at 389-90 ("Q. Does your company have access to the Department of Education's National Student Loan data system? A. Only through the client") |
| **E. The Service Agreement Implied That SLP Is Affiliated With The U.S. Department Of Education** | | |
| 150. | Paragraph 17 of the first version of SLP's Service Agreement stated that the agreement could "only be modified or amended by a written agreement signed by a corporate officer of SLP and DOE," even though ED has never had a role in any modification of the agreement. | SJ Ex. 22 (Prior Svs. Agmt) at 303; SJ Ex. 33 (Krause IH) at 422-23 ("Q. What role does the Department of Education play in a modification of this agreement, [] your Service Agreement? A. None.") |

| | | |
|---|---|---|
| 151. | Likewise, Paragraph 18 of the first version of SLP's Service Agreement included a paragraph entitled "Legal Authorization Form," where the consumer was advised that the form will "serve to acknowledge that Client has authorized . . . SLP . . . to act on their behalf to manage their student loan portfolio." The sentence that followed read "This is in accordance with the Department of Education (DOE)," without any clarification about what is meant by the sentence. | SJ Ex. 22 (Prior Svs. Agmt) at 303; SJ Ex. 33 (Krause IH) at 423-25 (the sentence was originally intended to give SLP authority to act on behalf of the consumer, but it was insufficient to do so, yet remained in the agreement anyway) |
| **F. SLP Representatives Made Other Statements Implying That SLP Is Affiliated With The U.S. Department Of Education** | | |
| 152. | Even when responding to consumer complaints, Defendants misrepresent the relationship between Student Loan Processing.US and ED by claiming that SLP "works directly with" or "works with" ED. | SJ Ex. 41 (Nelson Decl.) at 904 ("We are a loan management company that works with the Department of Education on our client's behalf"), 908 ("SLP works directly with the Department of Education on our client's behalf to receive the benefits of these programs.") |
| **IX. Misrepresentations Related To The Cost Of SLP's Student Loan Debt Relief Services** | | |
| 153. | Scripts used to enroll consumers in SLP's student loan debt relief services direct employees to include SLP's monthly maintenance fee in the new monthly payment amount that the consumer would be expected to pay toward his/her student loans if he/she enrolls with Student Loan Processing.US and were put in an ED repayment program. | SJ Ex. 11 (SLP Inbound Script No. 1) at 107; SJ Ex. 13 (SLP Inbound Script No. 3) at 119 |
| 154. | For instance, when discussing the consumer's eligibility for an ED repayment program, the enrollment | SJ Ex. 11 (SLP Inbound Script No. 1) at 107 ("dollar amount of new monthly |

| | | |
|---|---|---|
| | script directs SLP employees to advise consumers that the repayment "program that [would] provide [them] with the maximum benefits under the new law and save [them] the most money over the life of a loan" was a program where the monthly payment was "only $___ per month for ___ months." Employees are directed to include the $39 monthly payment amount in the quoted figure. | payment – be sure to add $39 monthly maintenance fee") |
| 155. | Current versions of the inbound enrollment script direct employees to identify the specific ED program for which the borrower may be eligible by name, and to state that under the new "program called [DOE Plan]" the consumer's monthly payment would be "only $___ per month for ___ months." Employees are directed to include the $39 monthly payment amount in the quoted figure. | SJ Ex. 13 (SLP Inbound Script No. 3) at 119 |
| 156. | The enrollment script does not include any language directed to the up to 50% of SLP consumers who are seeking to enroll in an income-driven repayment plan that would require zero payment toward their Federal loan balance. As a result, the employee is to tell such a consumer that his/her new program payment would be "only $39 per month" in the specific ED repayment plan, even though the entire $39 would only be payment as a monthly maintenance fee to Student Loan Processing.US (with no payment being made to the consumer's loan). | SJ Ex. 11 (SLP Inbound Script No. 1); SJ Ex. 12 (SLP Inbound Script No. 2); SJ Ex. 13 (SLP Inbound Script No. 3); SJ Ex. 35 (Gill Dep.) at 465-66; SJ Ex. 37 (SLP Dep.) at 518-19 |
| 157. | The enrollment script later directs the employee to separately disclose SLP's recurring monthly maintenance fee, including the amount, but the script | SJ Ex. 11 (SLP Inbound Script No. 1) at 107; SJ Ex. 13 (SLP Inbound Script No. 3) at 120 |

| | | |
|---|---|---|
| | directs employees to downplay those fees by stating that "all of the saving and the payments we discussed already have all of the fees for our services included and there are no additional costs whatsoever." | |
| 158. | Moreover, the enrollment script directs employees to separately disclose SLP's monthly maintenance fee only after asking the consumer to pay the upfront enrollment fee (and processing that payment if the consumer was ready to make payment). | SJ Ex. 11 (SLP Inbound Script No. 1) at 107; SJ Ex. 13 (SLP Inbound Script No. 3) at 119-20 |
| 159. | At no point does the enrollment script direct employees to affirmatively state that the monthly maintenance fee would be charged for the repayment term of the borrower's Federal student loans. | SJ Ex. 11 (SLP Inbound Script No. 1); SJ Ex. 12 (SLP Inbound Script No. 2); SJ Ex. 13 (SLP Inbound Script No. 3) |
| 160. | Likewise, at no point does the enrollment script direct SLP employees to separately disclose to consumers the amount of their new expected monthly payment towards their Federal student loan balance (exclusive of the monthly maintenance fee). | SJ Ex. 11 (SLP Inbound Script No. 1); SJ Ex. 12 (SLP Inbound Script No. 2); SJ Ex. 13 (SLP Inbound Script No. 3) |
| 161. | The language in the script does not specifically identify to whom the enrollment fee and monthly maintenance fee are paid. | SJ Ex. 11 (SLP Inbound Script No. 1) at 107 |
| 162. | During the call, the enrollment script directs employees to send the consumer a copy of SLP's Service Agreement, but the script instructs employees to send the agreement only after attempting to collect payment of the enrollment fee. | SJ Ex. 11 (SLP Inbound Script No. 1) at 107-08; SJ Ex. 13 (SLP Inbound Script No. 3) at 119-22 |
| 163. | At least one version of the Service Agreement presented the monthly maintenance fee and the loan payment as a combined "Estimated New Program Monthly Cost." | SJ Ex. 22 (Prior Svs. Agmt) at 301 |

| | | |
|---|---|---|
| 164. | Defendants' statements misled at least some consumers about the price of Defendants' student loan debt relief services. | SJ Ex. 40 (Albanese Decl.) at 562 (11 of the 88 complaints in FTC Consumer Sentinel are from consumers who allege that they were not properly informed about the amount of the monthly maintenance fee) |
| 165. | At least some consumers were expressly told that there were no fees other than the enrollment fee. | SJ Ex. 50 (Gomez Decl.) at 1391 ("I had been told that there would be no fees other than the upfront fee"); SJ Ex. 40 (Albanese Decl.) at 562 (14 of the 88 complaints in FTC Consumer Sentinel are from consumers who allege that they were not informed about the monthly maintenance fee during their enrollment call) |
| 166. | Consumers who did not know about the recurring monthly fee at the time of enrollment have indicated that they only later realized that they were being charged a monthly fee when reviewing their credit card or bank statement and noticing a recurring $39 auto-debit, in addition to (and separate from) their Federal student loan payment. | SJ Ex. 50 (Gomez Decl.) at 1391; SJ Ex. 46 (Kletzka Decl.) at 1370; SJ Ex. 48 (Bethea Decl.) at 1379; SJ Ex. 47 (Latus Decl.) at 1375 |
| **X. James Krause's Role In Designing, Implementing, And Overseeing The Activities Of Student Loan Processing.US** | | |
| 167. | Since founding Student Loan Processing.US in 2011, Krause has controlled all aspects of the operations and administration of Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 328-29 |
| 168. | Krause authorized and approved the content of all service agreements used by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 328; SJ Ex. 33 (Krause IH) at 420 |

| | | |
|---|---|---|
| 169. | Krause authorized and approved the content of all power of attorney forms used by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 328 |
| 170. | Krause authorized and approved all methods used by Student Loan Processing.US to advertise to or solicit consumers to purchase student loan services, including outbound telemarketing and the use of a direct mailer. | SJ Ex. 29 (Krause RFA) at 328; SJ Ex. 33 (Krause IH) at 408 |
| 171. | Krause authorized and approved the content contained in all of the various websites of Student Loan Processing.US, including, but not limited to, www.studentloanprocessing.us, www.slpus.org, and www.studentloanprocessing.org. | SJ Ex. 29 (Krause RFA) at 328 |
| 172. | Krause authorized and approved all of the direct mailers used by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 329 |
| 173. | Krause authorized and approved the content of all telephone scripts used by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 328 |
| 174. | Krause authorized and approved the amount of the enrollment fee charged to consumers by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 329 |
| 175. | Krause authorized and approved the time at which Student Loan Processing.US charged consumers the enrollment fee. | SJ Ex. 29 (Krause RFA) at 329 |
| 176. | Krause authorized and approved the amount of the monthly maintenance fee charged to consumers by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 329 |
| 177. | Krause authorized and approved the duration for which the monthly maintenance fee was charged to consumers by Student Loan Processing.US. | SJ Ex. 29 (Krause RFA) at 329 |

| XI. Consumer Complaints | | |
|---|---|---|
| 178. | Consumers have complained about Student Loan Processing.US to various third parties, including the Bureau and State Attorneys General. | SJ Ex. 40 (Albanese Decl.) at 562 (FTC's Consumer Sentinel Network recorded 88 complaints about Student Loan Processing.US between May 1, 2011 to September 22, 2015); SJ Ex. 41 (Nelson Decl.) at 796-97 (Student Loan Processing.US produced documents which it represented to consist of complaints and pleadings filed against Student Loan Processing.US in any of the 50 states) |
| 179. | As of September 22, 2015, the FTC Consumer Sentinel Database had approximately 88 complaints from consumers about Student Loan Processing.US, including complaints from consumers who indicated that Student Loan Processing.US had, at some point, misrepresented itself to be part of or affiliated with the Federal government, and who indicated that they were deceived regarding the monthly maintenance fee charged by Student Loan Processing.US. | SJ Ex. 40 (Albanese Decl.) at 562 |
| 180. | Consumers have also complained directly to Student Loan Processing.US about its products and services, including complaints that the $39 monthly maintenance fee was not disclosed to the consumer and that representations made by SLP employees led consumers to believe that SLP was affiliated with ED. | SJ Ex. 37 (SLP Dep.) at 522-23; SJ Ex. 33 (Krause IH) at 408, 413; SJ Ex. 36 (Esquibel Dep.) at 479-81 |
| 181. | During 2015, the majority of complaints received by Student Loan Processing.US | SJ Ex. 37 (SLP Dep.) at 524 |

| | | |
|---|---|---|
| | related to allegations that the $39 monthly maintenance fee was not disclosed to the consumer. | |
| 182. | Some consumers who feel that they were misled have been able to halt SLP's collection of monthly maintenance fees through filing complaints with government agencies or taking action through their financial institutions. | SJ Ex. 50 (Gomez Decl.) at 1391; SJ Ex. 51 (Chang Decl.) at 1396-97 |
| **XII. Final Judgments And Orders As A Result Of Actions By State Attorneys General** | | |
| 183. | On April 6, 2015, the State of Washington filed suit against IrvineWebWorks, Inc. d/b/a Student Loan Processing.US and Krause alleging violations of Washington's Consumer Protection Act and Debt Adjusting Act. | SJ Ex. 43 (WAAG Complaint) |
| 184. | On November 9, 2015, the King County Superior Court in the State of Washington entered a Stipulated Findings of Fact, Conclusions of Law and Judgment ("November 9, 2015 Stipulated Judgment"). | SJ Ex. 44 (WAAG Judgment) |
| 185. | The November 9, 2015 Stipulated Judgment included the following Findings of Fact:<br><br>"2.4 Defendant SLP is a 'debt adjuster' as that term is defined in RCW 18.28.010(1), and engaged in the business of 'debt adjusting' as defined in RCW 18.28.010(2). SLP's debt adjusting activities include counseling its clients regarding their student loan debt, managing and consolidating that debt, attempting to settle that debt through forgiveness and other programs, and adjusting student loan debt by arranging for alternative repayment plans." | SJ Ex. 44 (WAAG Judgment) at 1344 |

| | | |
|---|---|---|
| | "2.6 Defendant James E. Krause personally participated in, and with knowledge of, SLP's conduct in violation of the DAA [Debt Adjusting Act] and CPA [Consumer Protection Act]. Mr. Krause is therefore personally liable for SLP's CPA violations, and shall be jointly and severally liable with SLP."<br><br>"2.7 Defendant James E. Krause also aided and abetted each of SLP's violations of the DAA, which is a prohibited act under the DAA, and therefore a per se violation of the CPA." | |
| 186. | The November 9, 2015 Stipulated Judgment included the following Conclusion of Law:<br><br>"3.11 The named individual Defendant in this action, James E. Krause, is an officer of SLP and had control over its policies, activities, and practices. . . ." | SJ Ex. 44 (WAAG Judgment) at 1346 |
| 187. | The King County Superior Court's Order permanently enjoined Student Loan Processing.US and Krause from contracting for or receiving fees in excess of those allowed by Washington law in exchange for any debt adjusting service; ordered restitution of $144,169.46 to Washington consumers; imposed a suspended civil penalty of $150,000 against Student Loan Processing.US and Krause; and awarded a judgement of $124,000 against Student Loan Processing.US and Krause for the Attorney General's costs and attorneys' fees. | SJ Ex. 44 (WAAG Judgment) at 1346-49 |

| | | |
|---|---|---|
| 188. | On November 9, 2015, the Commonwealth of Massachusetts filed an Assurance of Discontinuance ("AOD") related to its investigation into the provision of services to student loan borrowers by SLP. | SJ Ex. 45 (MAAG AOD) |
| 189. | In the AOD, the Massachusetts Attorney General alleges that Student Loan Processing.US engages in the provision of credit services to student loan borrowers in Massachusetts in violation of Massachusetts General Laws, Chapter 93A, § 2 and Chapter 93, §§ 68B-D.<br><br>Specifically, the Massachusetts Attorney General alleges that Student Loan Processing.US "(a) charged fees in violation of G.L. c. 93 § 68B by charging such fees prior to the full, complete, and satisfactory performance of the services SLP agreed to perform; (b) made and used untrue or misleading representation in the offer or sale of its services; (c) failed to make the disclosures to Massachusetts Residents mandated by c. 93, § 68C; . . . ." | SJ Ex. 45 (MAAG AOD) at 1354, 1356 |
| 190. | Pursuant to the AOD, Student Loan Processing.US is required to pay $56,000 for the purpose of providing restitution to Massachusetts customers, and cease assessing charges to Massachusetts customers who do not opt-in to continue receiving services from Student Loan Processing.US. | SJ Ex. 45 (MAAG AOD) at 1357-58 |

**CONCLUSIONS OF LAW**

1. This is an action by the Bureau under the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and the

Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), and its implementing regulation, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. part 310. The Complaint seeks permanent injunctive relief and monetary relief for the Defendants' acts or practices in violation of the CFPA and TSR. The Bureau has the authority under the CFPA and the TSR to seek the relief it has requested.

2. The Complaint states a claim upon which relief can be granted against Defendants.

3. There is no genuine issue as to any material fact concerning the liability of Defendants for the unlawful practices charged in the Complaint, or the amount of consumer losses and ill-gotten gains resulting from Defendants' unlawful practices.

4. Uncontroverted facts show Defendants are "covered persons" and/or "related persons" as those terms are defined by the CFPA, 12 U.S.C. § 5481(6)(A), (19) and (25).

5. Uncontroverted facts show that Defendants are "sellers" or "telemarketers" of a "debt relief service," who engage in "telemarketing," as defined in the TSR, 16 C.F.R. part 310.2.

6. Uncontroverted facts show that since at least July 2011, in the course of telemarketing student loan debt relief services, Defendants have requested or received fees from consumers before negotiating, settling, reducing, or otherwise altering the terms of at least one of such consumers' debt. Defendants have requested or received payment of these fees prior to consumers making at least one payment pursuant to any settlement agreement, debt management plan, or other valid contractual agreement between consumers and their creditors.

7. Uncontroverted facts show that since at least July 2011, in the course of telemarketing student loan debt relief services, Defendants had made

misrepresentations, directly or by implication, in the sale of goods, that Defendants were affiliated with, endorsed by, or sponsored by the U.S. Department of Education, a Federal government entity.

8. Uncontroverted facts show that since at least July 2011, in the course of telemarketing student loan debt relief services, Defendants misrepresented, directly or by implication, in the sale of goods or service, the total costs to purchase, receive, or use any of Defendants' goods or services that were the subject of a sales offer.

9. Uncontroverted facts show that since at least July 2011, in the course of telemarketing student loan debt relief services and before the consumer consented to pay, Defendants failed to disclose truthfully, in a clear and conspicuous manner, the total costs to purchase, receive, or use Defendants' good or services.

10. Uncontroverted facts show that since at least July 2011, in connection with the offering or provision of student debt relief services, Defendants made representations, expressly or by implication, that created the net impression that Defendants were affiliated with the U.S. Department of Education even though, in truth and in fact, Defendants are not, and have never been affiliated with the U.S. Department of Education or any other state or Federal government agency.

11. Uncontroverted facts show that since at least July 2011, in connection with the offering or provision of student loan debt relief services, Defendants failed to clearly disclose and misrepresented the total cost of Defendants' student loan debt relief services.

12. As no material facts are in dispute, the Bureau is entitled to judgment as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

13. Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565, empower this Court to order injunctive and other equitable relief against the

Defendants for violations of the CFPA and TSR, including restitution and disgorgement of ill-gotten gains resulting from Defendant's unlawful practices, injunctive relief, and civil money penalties for violations of the Federal consumer financial laws.

14. The Bureau is entitled to a judgment for equitable monetary relief in the amount of $2,709,899.58 against Defendants as restitution for the upfront enrollment fees paid by Affected Consumers, $5,153,671.16 against Defendants as restitution for the monthly maintenance fees paid by Affected Consumers, $131,667.61 against Defendants in other fees paid by Affected Consumers, as well as additional restitution the Court deems appropriate for any additional fees paid by consumers who enrolled in Defendants' student loan debt relief services. Defendants shall be jointly and severally liable for the amount of equitable monetary relief awarded by the Court.

15. Defendants have recklessly violated the CFPA and the TSR, warranting second tier civil money penalties of $_______, for which Defendants are jointly and severally liable.

16. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

17. Entry of the accompanying Judgment is in the public interest.

Dated: December 28, 2015

Respectfully submitted,

David Rubenstein
*Deputy Enforcement Director*
Frank Kulbaski
*Assistant Deputy Enforcement Director*

/s/ Nicholas Jabbour
Nicholas Jabbour, DC Bar #500626
(Email: Nicholas.Jabbour@cfpb.gov)
Rina Tucker Harris, DC Bar #444550
(Email: RinaTucker.Harris@cfpb.gov)
Brandis C. Anderson, CA Bar #261325
(Email: Brandis.Anderson@cfpb.gov)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-7548
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau