JEFFREY C. BRIGGS (No. 100369)
BRIGGS LAW OFFICE
Email: jbriggs@jbriggslaw.com
6464 Sunset Blvd.
Suite 715
Hollywood, CA 90028
Phone: (323) 461-5400
Fax: (323) 908-7275

Attorney for Defendants Irvine WebWorks, Inc., dba Student Loan Processing.US, and James Krause

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>vs.<br><br>Irvine WebWorks, Inc., d/b/a Student Loan Processing.US, et al.,<br><br>Defendants. | CASE NO. 8:14-cv-01967-JVS-DFM<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT**<br><br>Hearing Date: January 25, 2016<br>Hearing Time: 1:30 pm<br>Hearing Place: Crtrm. 10C<br><br>(*Hon. James V. Selna, US District Judge, presiding*)<br><br>(Supporting Declaration of Jeffrey Briggs filed concurrently herewith) |

Defendants Irvine WebWorks, Inc., dba Student Loan Processing.US, and James Krause (collectively "SLP") respectfully submit this Memorandum of Points and Authorities in reply to plaintiff's opposition to SLP's motion for partial summary judgment on Count I of the Complaint.

# I

# SUMMARY OF ARGUMENT

There is no dispute that what SLP offers federal student loan debtors is a way to reduce their payments, lower their interest rates, and obtain eventual loan balance and accumulated interest forgiveness, as advertised, by way of entirely new consolidation loans provided by the US Department of Education ("DOE"). Everything an interested student loan debtor is told when s/he talks with SLP and completes a Service Agreement is consistent with providing student loan debtor access to DOE programs that consolidate pre-existing multiple student loans into a new DOE direct loan and an accompanying new repayment program that accomplishes these goals. All of SLP's services are part and parcel of its effort to secure and maintain such new DOE consolidation loans for the life of those loans.

Nor is there any dispute that the authors of the Telemarketing Sales Rule ("TSR") specifically excluded such an "offer to refinance existing loans with a new loan as a way of eliminating the original debts" from the definition of a "debt relief service" otherwise subject to the prohibition on charging a fee in advance of providing such "refinancing" services. The purposes behind the "advance fee" prohibition, and behind the exclusion of "new loan refinancing," also support SLP's contention that it is not a "debt relief service" as defined by the TSR because its services all pertain specifically to obtaining and maintaining such loans. SLP therefore is entitled to summary judgment on Count I of the Complaint.

# II

# SLP'S SERVICES ALL PERTAIN TO DOE LOAN CONSOLIDATION

Plaintiff first contends that because SLP's mailer offers to help debtors lower their monthly payments and interest rates and to obtain loan forgiveness, it is a "debt relief service" prohibited by the TSR from collecting a fee before its services are accomplished, regardless of whether SLP in fact provides these benefits by way

of an entirely new consolidation loan that the TSR excludes from that prohibition. But no reasonable student loan debtor could fail to understand that SLP is providing, specifically, DOE loan consolidation services before contracting for SLP's services.

SLP's Service Agreement describes its services specifically in reference to "Federal Student Loan Consolidation . . . provided by programs offered through the Department of Education (DOE)," and as "arrang[ing] a Federal Student Loan Consolidation Loan through the . . . [DOE]" and "continu[ing] to manage said loan on behalf of client by . . . fil[ing] the necessary periodic paperwork to DOE on Client's behalf throughout the term of the DOE loan to ensure that Client continues to receive maximum benefits offered by DOE consolidation programs." (Krause Decl. 1, Ex. D at p. 26 "Recitals")[1] The DOE consolidation loan program is referenced consistently throughout the Service Agreement. (Id.) Plaintiff does not dispute that the DOE consolidation loan terms and repayment programs are not "negotiated," "settled," or "altered" themselves, nor that the underlying loans are not entirely replaced.

SLP's representative telephone script for handling all interested prospective clients also describes SLP's services specifically in relation to DOE's consolidation loan program. The script explains SLP's services in the context of being a third-party helping to make simple what the government has made "more complicated," comparing SLP to a lawyer who helps someone obtain social security benefits or one who helps someone else file her tax returns, stating that SLP will help its clients "apply for the [DOE student loan consolidation program] benefits on your behalf with the Department of Education." (Krause Decl. 1, ¶12, Ex. C ("Inbound Call Script")) As a part of the telephone conversation in which a client contracts for SLP's services, the Service Agreement and its references to DOE consolidation

[1] "Krause Decl. 1" is the Declaration of James Krause on file in support of SLP's motion for partial summary judgment.

loans are all reviewed, some parts are specifically read aloud, and the client is given time to review the contract documents thoroughly. (Id., and ¶14)

The DOE loan consolidation programs to which SLP's materials consistently refer do provide the benefits of "lower monthly payments, lower interest rates, and loan forgiveness" advertised in SLP's mailer. (Krause Decl. 2, ¶¶ 18 and 26)[2] Though "debt relief services" providers who do not specifically handle DOE loan consolidation might use those same phrases to promote their own "debt management," "debt negotiation," and "debt settlement" services, once an interested student loan debtor contacts SLP and contracts for its services there can be no reasonable doubt that s/he is going to get those benefits from SLP by way of a loan consolidation through the DOE program. A real estate brokerage typically promotes buying and selling property, but its specialty in commercial versus residential property may be apparent only once contact is made—that does not make a commercial property broker a residential property broker, or vice versa. Similarly here, once a student loan debtor contacts SLP, he could not reasonably conclude that SLP is offering anything other than DOE loan consolidation assistance.

Plaintiff next contends, however, that SLP's provision of ongoing services to help its client fulfill ongoing maintenance requirements for the new DOE consolidation loan is a "debt relief service" separate from DOE loan consolidation itself—that such ongoing "management" of the DOE loan does not involve a new consolidation loan, and thus is a service not excluded by the "new loan refinance" exception to the "debt relief service" definition. This is a separation that cannot be made.

First, periodic re-certification of a student loan debtor's personal and financial information is a required part of his maintenance of his new DOE

[2] "Krause Decl. 2" is the Declaration of James Krause on file in opposition to plaintiff's motion for summary judgment, which motion also seeks summary judgment as to Count I of the Complaint.

consolidation loan. One who fails to re-certify on a timely basis loses the benefits of the new DOE consolidation loan repayment program, and the repayment program that accompanies the new DOE loan is subject to change as the debtor's circumstances change. (Krause Decl. 1, at ¶10) The requisite periodic maintenance filings are part and parcel of the new loan itself, and therefore so are SLP's services in that regard.

Second, because it is part of the original loan consolidation service for which the client has agreed to pay SLP, the client is not being charged a fee "in advance" of that maintenance service—the new consolidation loan already has been obtained by SLP for the client.

If one buys a car with dealer financing that includes free periodic maintenance service by that dealer, the loan amount does not change because the maintenance is included in the price; similarly here, SLP charges a fee for its loan consolidation service that includes an initial fee and a monthly fee, and the ongoing service is included in the fee for the overall loan consolidation service. In other words, one cannot divorce the requirements for maintenance of the new consolidation loan from the new consolidation loan itself, or split up the fee—they go together. As part of the new consolidation loan obtained by SLP, its ongoing maintenance services related to that new loan also are excluded from the TSR's definition of "debt relief service."

Even if one could separate the new consolidation loan from its maintenance requirements, it remains undisputed that any change in a debtor's circumstances after the new loan is issued by DOE does not result in "renegotiation, settlement, or alteration" of the debt's terms. It is undisputed that DOE's repayment programs are prescribed by its own formulae, and neither the new loan's amount nor those repayment terms are "negotiated" or "settled." (Krause Decl. 1, ¶¶ 9, 10, and 16) Furthermore, all DOE repayment programs are available with the same consolidation loan, and while eligibility may change as the student loan debtor's

circumstances change, the new applicable repayment program does not "alter" the consolidation loan's terms. The repayment programs are established by DOE itself, and one qualifies for one or another such repayment program at various points in time—what SLP does, as a part of securing a client's original debt consolidation loan, is simply make sure the client gets whatever particular repayment program s/he qualifies for at a given point in time. This further demonstrates that SLP's post-loan consolidation services are simply part and parcel of its original DOE loan consolidation service, which is a new loan excepted from the definition of "debt relief service" that otherwise would prohibit an advance fee, and for which SLP's fee is set at the outset by an initial payment and then an ongoing payment over time.[3]

Finally, plaintiff asserts that SLP provided services to some student loan debtors who already had consolidated their loans and charged the same fee in advance of further maintenance services. In fact, those instances were not a part of what SLP promoted, but simply were offered to a very few clients in a few unique circumstances: SLP *did* obtain new "re-consolidation" loans from the DOE for a few clients who previously had consolidated their loan *outside* the DOE program, so those clients did get new DOE loans with SLP's assistance; SLP helped several disabled clients who already had obtained DOE consolidation secure proof of permanent disability and obtain balance forgiveness; and SLP also tried to help several student loan debtors secure "rehabilitation" in order to later qualify for DOE loan consolidation, but stopped this effort very early on and in fact wasn't paid. (Krause Decl. 2, ¶25) Such services all were connected specifically to the clients' new DOE consolidation loans, and even if they can be separated from those new loans, these very few circumstances do not mean the Court cannot grant summary judgment as to the vast bulk of clients to whom SLP clearly did provide new DOE

---

[3] SLP refunds all fees if a DOE consolidation loan is not obtained. (Krause Decl. 2, ¶25)

consolidation loans and thus did not provide "debt relief services" under the TSR's advance fee prohibition exemption.

**III**

**THE PURPOSE OF THE "ADVANCE FEE' PROHIBITION DOES NOT APPLY TO SLP**

Plaintiff next contends that the purposes behind the regulators' "advance fee" prohibition apply to SLP's services to the extent SLP's "maintenance" services are severable from its services in assisting clients obtain a new DOE consolidation "refinance" loan. As explained above, those "maintenance" services are not severable from the original DOE consolidation loan—they are a required part of holding onto that loan over time. Regardless, it is clear that the authors of the TSR had good reason to exempt new "refinance" loans from the "debt relief service" definition and thus from the prohibition on "advance fees." These reasons apply equally to SLP's ongoing maintenance services to the extent they can be considered separately from securing the DOE consolidation loan itself.

The FTC's concern in creating the "advance fee" prohibition specifically was in reference to providers of "debt management plans," "debt settlement services," and "debt negotiators." See Telemarketing Sales Rule; Final Rule, I.C "Overview of Debt Relief Services," 75 Federal Register, No. 153, at 48459-48464 (https://www.gpo.gov/fdsys/pkg/FR-2010-08-10/pdf/2010-19412.pdf ). Each of those services is, in fact, typically involved in some degree of renegotiation, settlement, or alteration of a debtor's pre-existing debts—and *not* involved in obtaining new loans to replace existing debts. Each of these services, as described at length by the TSR authors, typically involves promises of significant debt reduction or elimination by way of negotiation with existing creditors for reduced balances and interest rates, reduced payment obligations, and/or lump sum settlement payments, and often involves debtor payment to the service provider

rather than directly to the creditor. (Id.) The regulators found that such services frequently are unsuccessful in actually negotiating any new terms with creditors, or do so only after the passage of substantial time, and thus that debtors frequently only increase their debt load due to the additional payment of the service's fees in advance. (Id.) The regulators also found that many debtors "dropped out" of these kinds of services after paying substantial fees and before actually getting any benefit from these service providers. In short, the TSR authors found that most debtors engaging these kinds of "debt relief services" ended up worse off than they were before paying the provider's fees.

None of these risks are present in regard to SLP's assistance to student loan debtors in obtaining a DOE consolidation loan. All of SLP's clients obtain such a loan, or they pay SLP nothing. (Krause Decl. 2, ¶¶ 18-19) All of SLP's clients secure a substantial reduction in their monthly payment obligation, in their overall payoff amount after forgiveness, or both—even with SLP's fees included—and they make their new DOE consolidation loan payments directly to the DOE loan servicers rather than to SLP. The vast majority of SLP's clients maintain their new payments (with SLP's help), and thus do not "drop out" of their DOE loan (even if they do try to stop paying SLP for its help in obtaining that new loan). The DOE dictates the eligibility for certain repayment programs accompanying the loan as the debtor's circumstances change, and is not dependent on SLP's negotiation skill or lack thereof. All who maintain their payments on plans eligible for forgiveness eventually will achieve loan forgiveness regardless of how much of the full balance they have paid off. (Id.)

*The proof is in the proverbial pudding*: Since inception, SLP has assisted 5,396 student loan debtors in obtaining DOE consolidation. Those 5,396 clients owed a total of $303,530,759 in federally insured student loans, an average of $56,251 each. 1,355 of these clients qualified for Public Service Loan Forgiveness programs (25%), and most of the rest qualified for loan forgiveness

after 20 or 25 years of regular payments as reduced by the DOE consolidation loan repayment plans attached to their loans at inception and over time. All lower their monthly student loan repayment obligation and/or ultimate loan balance and interest repayments to some extent, even when SLP's fees are included. (Krause Decl. 2, at ¶ 18) Some 75% of SLP's clients have remained with SLP (Id., at ¶19), and many have publicly expressed their gratitude to SLP. (Id., ¶14 and Ex. F)

More quantification of SLP client success: A random sampling of SLP client files shows they collectively owed total monthly payments of $65,984.33 before SLP helped them achieve DOE loan consolidation, reduced to a total of $18,201.54 for a collective monthly saving of $47,782.79, or by more than 72%, after the DOE loan consolidation that SLP helped them apply for and maintain; and the clients among that random selection who qualified for public service forgiveness will, if they continue to recertify with SLP's help and continue to pay, achieve forgiveness after ten years and save $1,337,343 on their remaining loan balances, even after paying SLP's fee. (Krause Decl. 2, at ¶ 18)

Moreover, SLP has helped more than 25% of its clients correct DOE processing errors that led to their being assigned to a more expensive payment plan than to which they were entitled. (Id., at ¶20) Again, this is not a service separate and apart from helping clients obtain a DOE consolidation loan, it is part of what SLP does in securing the DOE loan—and given the high rate of DOE error, it proves both SLP's value to its clients and its value to DOE itself, which presumably wants student loan debtors to take advantage of its loan consolidation programs but which has done a poor job of making those programs known and making them easy to obtain. (Krause Decl. 1, ¶¶6-7 (and ¶22, Ex. E, regarding DOE's own report on its many loan servicer errors); Krause Decl. 2, ¶¶8-9 (and ¶25 regarding disabled person errors)); Briggs Decl., ¶2 and Ex. L (former DOE official's dismay at difficulties in applying for DOE consolidation loans))

It is no surprise that SLP has many satisfied clients. In no way do they

resemble those who suffered at the hands of the "debt management plans," "debt settlement services," and "debt negotiators" that were of concern to the TSR regulators when they prohibited their collection of fees in advance of performance. It is why they excluded new loan service providers from that prohibition. And it is why Count I of the Complaint should be dismissed.

## IV
## CONCLUSION

Plaintiff's effort to get around the TSR's clear "advance fee" prohibition exemption for SLP's DOE loan consolidation services is troubling. SLP has provided actual benefit to its clients: informing them about the DOE program, helping them through the application process, correcting DOE errors, maintaining them in the applicable repayment plan over time, and saving them thousands of dollars, even after paying SLP's fees, in monthly payments and overall balance forgiveness. SLP clients tend to stick with their DOE loans, and SLP has many satisfied clients. SLP also has helped the government by securing repayment of student loans that likely otherwise would be in default or abeyance and would be contributing to the trillion dollar student loan debt bubble. And US taxpayers are benefitting as well. That plaintiff has selected SLP for this strained enforcement of a clear regulation, instead of trying to work with SLP to understand, among other things, the many ways in which DOE could do better, smacks of an enforcement agency whose priorities are grossly misplaced.

SLP is not a "debt relief service" under the subject regulation as clearly defined and reasonably understood, it is not prohibited from charging an advance

/ / /

/ / /

/ / /

/ / /

fee for its services, and Count I of the Complaint should be adjudged in SLP's favor.

Respectfully submitted,

Dated: January 11, 2016

JEFFREY C. BRIGGS
BRIGGS LAW OFFICE

By:_________/S/____________________
Jeffrey C. Briggs
Attorneys for Defendants Irvine WebWorks, Inc., dba Student Loan Processing.US, and James Krause