JEFFREY C. BRIGGS (No. 100369)
BRIGGS LAW OFFICE
Email: jbriggs@jbriggslaw.com
6464 Sunset Blvd.
Suite 715
Hollywood, CA 90028
Phone: (323) 461-5400
Fax: (323) 908-7275

Attorney for Defendants Irvine WebWorks, Inc., dba Student Loan Processing.US, and James Krause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>vs.<br><br>Irvine WebWorks, Inc., d/b/a Student Loan Processing.US, et al.,<br><br>Defendants. | CASE NO. 8:14-cv-01967-JVS-DFM<br><br>DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Requested by the Court After Hearing)<br><br>Hearing Date: January 25, 2016<br><br>(*Hon. James V. Selna, US District Judge, presiding*) |

In its *reply* to defendants' ("SLP") opposition to plaintiff's summary judgment motion, plaintiff for the first time argued that although SLP collects payment information from its clients after SLP's disclosure of its student loan consolidation service *enrollment* fee, it does so prior to SLP's disclosure of its *monthly maintenance fee* and thereby violates the Telemarketing Sales Rule, 16 CFR 310.3(a)(1)(i)("TSR").

The TSR expressly requires disclosure of the "total costs to purchase, receive, or use" SLP's services "[b]efore a customer consents to pay" for those services. Plaintiff contends that the term "consents to pay" includes merely "asking for any credit card, bank account, or other information that [the service provider]

will or could use to obtain payment." The Court requested SLP to respond to this claim.

First, plaintiff's contentions that SLP discloses the monthly fee only after asking the consumer "to *pay* the upfront enrollment fee (and processing that payment if the consumer was ready to make payment)" (plaintiff's alleged "uncontested fact" no. 158, at Docket # 35)(*emphasis added*), "instructs employees to send the agreement only after *attempting to collect payment* of the enrollment fee" (id., no. 162)(*emphasis added*), and "never specifically discloses the monthly maintenance fee before *collecting payment* (id., nos. 159-161)(*emphasis added*) all are genuinely contested. (SLP's Statement of Genuine Disputes, Docket # 36, at nos. 158-162 with evidentiary references.) SLP categorically states, and the evidence establishes, that no actual payment is collected or even attempted to be collected until after the consumer has reviewed and signed the SLP service agreement thoroughly disclosing all of SLP's fees. (Id.; Krause and Gill Decls., Docket #40-1 and -12 at ¶¶ 15-16 and 9, respectively)

Second, SLP *does* disclose "[t]he *total costs* to purchase, receive, or use" its services (16 C.F.R. 310.3(a)(1)(i))(*emphasis added*) before asking for the consumer's payment information. Consumer payment source information is collected only after SLP has advised the consumer of her *total new monthly payment amount*, inclusive of SLP's monthly fee, for the consolidated loan that SLP will help her secure *and* the amount of the one-time enrollment fee:

> Thank you for holding . . . . The program that will provide you with the maximum benefits under the new law and saves you the most money over the life of the loan would be called [DOE PLAN] where your monthly payment will be only (dollar amount of new monthly payment – be sure to add $39 monthly maintenance fee)[Estimated New Program Monthly Cost] per month for [Notes 3

> (months in term)] months .
>
> . . .
>
> Now there is a one-time enrollment cost, which is only 1% of your total loan balance. . . .

(SJ Ex. 13 (SLP Inbound Script No. 3); SJ Ex. 11 (SLP Inbound Script No. 1)) Only *after* these required "*total costs*" are disclosed does SLP request the consumer's payment method and information. (Id.) Furthermore, SLP's newer script gives the consumer the option of providing the payment information then or after the detailed service agreement is prepared and reviewed:

> Next, we can schedule your enrollment payment and complete your billing information, or we can start your application and come back to this later. {If client wants to complete rest of agreement first - scroll down to *Completing the Agreement* and complete billing Information before sending to docusign.}

(SJ Ex. 13 (SLP Inbound Script No. 3))

Having already disclosed the consumer's new total monthly cost for the life of the new consolidation loan, and the specific amount of SLP's enrollment fee, the TSR entitles SLP to obtain consumer payment *information* from those who select the option to do so at that time in the enrollment process. Immediately after , moreover, SLP further specifies the $39 monthly maintenance fee and supplies the consumer with a service agreement package that in several places discloses the enrollment and monthly fees—and neither fee actually is collected until after the consumer has reviewed and signed the agreement evincing its enrollment with, and specific consent to pay for, SLP's services. (Id., and Krause Decl., Docket #40-1 at ¶¶ 15-16 and Ex. D (40-5-6)

Third, the TSR itself specifically defines "consents to pay [footnote 659] . . ." *only as follows*:

> n. 659: When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier . . . . In the case of debt relief services, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) *before the consumer enrolls in an offered program*.

16 C.F.R. 310.3(a)(1) at n. 659 (*Emphasis added*). The underlying regulator commentary confirms as follows:

> In the case of debt relief services, a footnote added to the Final Rule clarifies that the provider must make the required disclosures *before the consumer enrolls in an offered program*. Thus, debt relief providers must make the disclosures at the time the provider is marketing the service and *before the consumer signs an enrollment contract or otherwise agrees to enroll* . . . .

75 Fed. Reg. 48496 ("4. Timing of Required Disclosures")(*emphasis added*). Indeed, in the same section of commentary, but with regard to telemarketers generally, the regulators state that the TSR's "consent to pay" language "more closely comports with the [FTC's] intent in the original language to trigger the disclosure requirement *before any agreement is executed* . . . ." (Id.) (*emphasis added*). As noted above, all of SLP's fees are fully disclosed before the consumer signs his SLP Service Agreement and thereby enrolls in SLP's services program.

Immediately after the foregoing language general telemarketer language, the regulators note that "consents to pay encompasses the conduct that the [FTC] has previously identified as triggering the disclosure requirement under the *pre-existing* TSR." Id. (*emphasis added*) Footnote 530 to that sentence then *also* states, as above, that "disclosures must be made '[b]efore a seller or telemarketer obtains a consumer's consent to purchase, or persuades a consumer to send any full or partial

payment'." Only in a citation to the "TSR Compliance Guide" (issued under the *pre-existing* TSR) contained in *that* footnote does one find support for the plaintiff's contention that one must disclose total cost information before obtaining a method of payment. Nevertheless, even then it is required *only in the context of "outbound calls"*—as to "*inbound calls*," the "Guide" says only that the total cost information must be provided "before the consumer *pays* for the goods or services offered." "TSR Compliance Guide" at 12 (https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule) (*emphasis added*). As SLP's telephone scripts make clear, clients typically enroll by *calling SLP* after receipt of a mailer, and since early 2014 SLP has not sent any mailers and has relied on calls *from consumers* referred by satisfied SLP clients. (Krause Decl., Docket #40-1 at ¶11)

In that light, a fair reading of the regulators' subsequent comment on the *current* TSR that

> disclosures must be made before any act or communication that *signifies* the consumer's consent to pay, *such as* sending full or partial payment; providing credit card, bank account or other billing information, stating agreement to a transaction, or invoking an electronic process used to electronically sign an agreement

(75 Fed. Reg. 48496 ("4. Timing of Required Disclosures"))(*emphasis added*) is that it is exemplary only, applies per the old "Guide" only to *outbound* calls, and that the critical requirement is that disclosures be made before actual enrollment and actual payment at least with respect to inbound calls—all true as to SLP.

In *FCC v. Fox Television Stations, Inc.*, 567 US ___ (No. 10-1293)(June 21, 2012), the Court reminded us that "due process protection against vague regulations 'does not leave [regulated parties] . . . at the mercy of noblesse oblige,'" (Slip Op. at 18), and that "requirement of clarity in regulation is essential to the protections

provided by the . . . Fifth Amendment" and "requires the invalidation of laws that are impermissibly vague." (Slip Op. at 15) SLP does disclose "total costs" to consumers before obtaining their payment information, before they enroll, and before any payment is actually made. Only under a ping-pong reading of the TSR and several regulation commentaries does plaintiff contend otherwise—indeed, the first time this argument ever was made by the government's own enforcer was in its *reply* brief on its own summary judgment motion, evincing its own confusion over the import of these particular regulations as applied to SLP.

Just as any potential ruling that SLP is a "debt relief service" should be confined to the few factual instances in which it offered consumers something other than a loan consolidation, any potential ruling that SLP *has* violated the "consent to pay" aspect of the TSR should be confined to those factual instances where consumers chose to provide payment information after SLP's disclosure of "total costs" and in the context of outbound calls from SLP.

Dated: February 2, 2016

JEFFREY C. BRIGGS
BRIGGS LAW OFFICE

By:_________/S/____________________
Jeffrey C. Briggs
Attorneys for Defendants Irvine WebWorks, Inc., dba Student Loan Processing.US, and James Krause