RINA TUCKER HARRIS, DC Bar #444550 (*Pro Hac Vice*)
(Email: RinaTucker.Harris@cfpb.gov; Phone: 202-435-9196)
NICHOLAS JABBOUR, DC Bar #500626 (*Pro Hac Vice*)
(Email: Nicholas.Jabbour@cfpb.gov; Phone: 202-435-7508)
BRANDIS C. ANDERSON, CA Bar #261325
(Email: Brandis.Anderson@cfpb.gov; Phone: 202-435-7548)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

JEFFREY C. BRIGGS, CA Bar #100369
(Email: jbriggs@jbriggslaw.com; Phone: 323-461-5400)
Briggs Law Office
6464 Sunset Blvd., Ste. 715
Hollywood, CA 90028
Fax: 323-908-7275

Attorney for Defendants IrvineWebWorks, Inc.,
  dba Student Loan Processing.US, and James Krause

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. SACV14-1967-JVS (DFMx) |
| Plaintiff, | **STIPULATED FINAL JUDGMENT AND ORDER** |
| v. | |
| IrvineWebWorks, Inc. d/b/a Student Loan Processing.US, *et al.*, | |
| Defendants. | |

1

Plaintiff Consumer Financial Protection Bureau (Bureau) commenced this civil action on December 11, 2014 against Defendants IrvineWebWorks, Inc. d/b/a Student Loan Processing.US and James Krause to obtain injunctive relief, a civil penalty, and other relief.  The Complaint alleges violations of the Telemarketing Sales Rule (TSR), 16 C.F.R. part 310, and sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1), in connection with Defendants' alleged marketing and sale of student loan debt relief services and the charging of advance fees.

The Bureau moved for summary judgment against Defendants on December 28, 2015.  (Docket No. 34).  Defendants moved for partial summary judgment on Count I of the Complaint on the same date.  (Docket No. 33).  On February 5, 2016, the Court granted the Bureau's motion for summary judgment on Count I of the Complaint, and granted in part the Bureau's motion for summary judgment on Counts III and V of the Complaint.  (Docket No. 59, MSJ Order).  The Parties then commenced settlement discussions with the assigned Magistrate Judge.

The Parties, by and through their respective counsel, now jointly request that the Court enter this Stipulated Final Judgement and Order (Final Order).

I.    **FINDINGS**

1.    The Court has jurisdiction over the Parties and the subject matter of this action.

2.    The Parties agree to entry of this Final Order, without adjudication of the remaining issues of fact or law pleaded in the Complaint, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date this Final Order is entered.

3.    Defendants neither admit nor deny any allegations in Complaint, except as stated in this Final Order.  For purposes of this Final Order, Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

4.      Defendants admit that defendant James Krause is a "related person" as defined by the CFPA.

5.      The Court found that the evidence accepted on summary judgment established that defendant IrvineWebWorks, Inc. d/b/a Student Loan Processing.US's services are "debt relief services" as defined by the TSR.

6.      The Court found that the evidence accepted on summary judgment established that Defendants requested and received a fee or consideration that violated 16 C.F.R. § 310.4(a)(5)(i).  MSJ Order at 8-13.

7.      The Court found that the evidence accepted on summary judgment established that Defendants failed to disclose truthfully, in a clear and conspicuous manner, the total costs to purchase, receive, or use their student loan services before a consumer consented to pay for those services as defined by and in violation of 16 C.F.R. § 310.3(a)(1)(i) and the CFPA.  MSJ Order at 16-21.

8.      Defendants waive service under Rule 4(d) of the Federal Rules of Civil Procedure and waive all rights to seek judicial review or otherwise challenge or contest the validity of this Final Order.  Defendants also waive any claims that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Final Order.  Each party will bear its own costs and expenses, including, without limitation, attorneys' fees.

9.      Entry of this Final Order is in the public interest.

## II.    **DEFINITIONS**

The following definitions shall apply to this Final Order:

10.     "Advance Fee" means any fee or consideration requested or received from a consumer, in connection with telemarketing, by an entity, whether directly or indirectly, that occurs before:

a.  That entity has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement

3

agreement, debt management plan, or other such valid contractual agreement executed by the consumer;

    b. The consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the consumer and the creditor or debt collector; and

    c. To the extent that debts enrolled in a service provided by the entity are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (1) bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount; or (2) is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.

11.    "Affected Consumer" means any consumer who paid any money to Student Loan Processing.US for Student Loan Services pursuant to any agreement entered into on or before the Effective Date.

12.    "Debt Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor, even if such program or service actually involves only the consolidation and/or refinancing of existing debt.

13.    "Defendants" shall mean Student Loan Processing.US and Krause, individually, collectively, or in any combination.

14.    "Effective Date" means the date on which the Final Order is entered by the Court.

15.     "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

16.     "Krause" means James Krause, as well as his successors and assigns.

17.     "Monthly Maintenance Fee" means any recurring monthly fee charged by Student Loan Processing.US for its Student Loan Services.

18.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against one or both Defendants based on substantially the same facts as this matter.

19.     "Student Loan Processing.US" means IrvineWebWorks, Inc. d/b/a Student Loan Processing.US, as well as its successors and assigns.

20.     "Student Loan Service" means any program, product, or service marketed, offered, provided, administered, or sold related to student loans.

**III.   ORDER**

**A. CONDUCT PROHIBITIONS AND INJUNCTIVE RELIEF**

**IT IS HEREBY ORDERED** as follows:

21.     Defendants and their officers, agents, directors, and employees, whether acting directly or indirectly, must immediately cease and desist from any violation of the TSR and sections 1031 and 1036 of the CFPA.

22.     All agreements related to Student Loan Services entered into up to and including the date of the entry of this Final Order between any consumers and Defendants (including any service agreement or power of attorney designation) are rescinded, and shall be null and void effective immediately.

23.     Defendants and their officers, agents, directors, and employees, whether acting directly or indirectly, shall immediately cease assessing any fees on any consumers pursuant to the agreements described in the preceding Paragraph.

24.     Within 10 days of the Effective Date, Defendants must provide to the Bureau, via a secure method of transmission, a report containing the following

information for each Affected Consumer:  (a) the consumer's name, Social Security number, postal address, phone number, and email address; (b) the name of any U.S. Department of Education repayment programs or plans in which the Affected Consumer is enrolled as of the date on which the report is generated; (c) if the Affected Consumer is enrolled in any income-driven repayment or forgiveness plan offered by the U.S. Department of Education, the Affected Consumer's recertification or renewal deadline within the next 12 months; (d) the Affected Consumer's Federal student loan servicer; (e) the address on file for the Affected Consumer with the Affected Consumer's Federal student loan servicer; (f) the date on which the consumer enrolled with Defendants for Student Loan Services; (g) all enrollment fees, monthly maintenance fees, and other fees paid by the consumer to Defendants; and (h) any refunds provided to the consumer (including the amount of each refund, the date of each refund, and the reason for each refund), excluding any refunds provided by the Washington Attorney General's Office and the Massachusetts Attorney General's Office related to Defendant's Student Loan Services.

25.    Within 30 days of the Effective Date, Defendants shall contact all consumer reporting agencies to which they have supplied or asked to be supplied negative or derogatory information concerning any consumer who enrolled with Student Loan Processing.US, if any, and take all steps necessary to have this negative or derogatory information removed for such consumers.

26.    Within 45 days of the Effective Date, Defendants shall permanently cease all operations of Student Loan Processing.US, including all operations by which Student Loan Processing.US markets, offers, provides, administers, or sells Student Loan Services.  Without limiting the foregoing, during the 45-day time period during which Defendants are undertaking actions to permanently cease operations of Student Loan Processing.US, Defendants shall:

    a.  Not enroll any new consumers with Student Loan Processing.US.  To the extent that any consumer submits paperwork or other documentation seeking to enroll with Student Loan Processing.US, Defendants shall promptly return that paperwork and documentation and notify the consumer that Student Loan Processing.US is ceasing operations;

    b.  For any Affected Consumer enrolled in any income-driven repayment or forgiveness plan offered by the U.S. Department of Education whose annual recertification or renewal deadline occurs within the 30-day time period following the Effective Date, prepare, process, and mail any paperwork required for the Affected Consumer to maintain enrollment in the plan; and

    c.  Send or make any routine reminders or notifications to Affected Consumers regarding recertification or renewal deadlines for income-driven repayment or forgiveness plans offered by the U.S. Department of Education that Defendants would otherwise send or make during the 30-day time period following the Effective Date.

27.   Nothing in Paragraph 26 shall limit or affect Defendants' ability to:

    a.  Comply with any provision of this Final Order;

    b.  Send to each Affected Consumer who requests it, and to the extent not already done, via a secured method of electronic transmission or via postal mail, copies of all paperwork filed on the consumer's behalf with the U.S. Department of Education or the consumer's student loan servicer; or

    c.  Forward to any Affected Consumer any mail addressed to any Affected Consumer that is received by Defendants.

28.     Except to the extent provided in Paragraphs 26 and 27, Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

    a.   Advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Service or Student Loan Service;

    b.   Assisting any person advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Service or Student Loan Service; or

    c.   Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in or assisting in advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Service or Student Loan Service.

29.     Within 30 days of the Effective Date, Defendants will cause the written notice concerning this Final Order attached hereto as Exhibit A to be sent to all Affected Consumers by first class postal mail, address correction service requested.  No other materials shall be transmitted with the notice.

## B. MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

30.     A judgment for equitable monetary relief and damages is entered in favor of the Bureau and against the Defendants, in the amount of $8,249,548.48, for the purpose of providing redress to Affected Consumers; however, full payment of this judgment will be suspended upon satisfaction of the obligations in Paragraph 31 of this Section and Paragraph 40 of Section D, and subject to Section C of this Final Order.

31.     Within 10 days of the Effective Date, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $326,000, toward satisfaction of the judgment ordered in Paragraph 30.

32.    With regard to any money that Defendants pay under this Section, if Defendants receive, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if Defendants secure a tax deduction or tax credit with regard to any federal, state, or local tax in respect of any money that Defendants pay under this Section (Additional Payment), Defendants must:  (a) immediately notify the Bureau's Enforcement Director in writing, and (b) within 10 days of receiving the Additional Payment, Defendants must transfer to the Bureau the full amount of such Additional Payment to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions.  After the Bureau receives the Additional Payment, that payment will be applied toward the judgment entered in Paragraph 30, and the amount of the suspended judgment referenced in Paragraph 30 will be reduced by the amount of the Additional Payment.

33.    Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

34.    If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement.  Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

35.    Payment of redress to any Affected Consumer under this Final Order may not be conditioned on that Affected Consumer waiving any right.

## C. EFFECT OF MISREPRESENTATION OR OMMISSION REGARDING FINANCIAL CONDITION

**IT IS FURTHER ORDERED** that:

36.     The Bureau's agreement to entry of this Final Order is expressly premised on the truthfulness, accuracy, and completeness of the forms titled "Consumer Financial Protection Bureau: Financial Statement of Individual Defendant," "Consumer Financial Protection Bureau: Financial Statement of Corporate Defendant," and supporting documents submitted to the Bureau on or about March 1, 2016 and March 2, 2016 (collectively, Financial Statements), which Defendants certified under penalty of perjury.

37.      If the Bureau in its sole discretion determines that Defendants have failed to disclose any material asset or that any of its Financial Statements contain any material misrepresentation or omission, including materially misstating the value of any asset, then the suspension of the monetary judgment entered in Section B will be terminated, and the Bureau can seek to enforce in any appropriate Federal district court as immediately due and payable the full judgment entered in Section B of this Final Order, $8,249,548.48, less any amounts paid under Section B of the Final Order.

38.     After the reinstatement of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the date of entry of this Final Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

**D. CIVIL MONEY PENALTY**

**IT IS FURTHER ORDERED** that:

39.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in the Complaint and continuing to the entry of this Final Order, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendants must pay a civil money penalty of at least $1 to the Bureau, but no more than $1 plus any amount due under Paragraph 42 of this Section.

40.     Within 10 days of the Effective Date, Defendants must pay $1 of the civil money penalty referred to in Paragraph 39 by wire transfer to the Bureau or the Bureau's agent in compliance with the Bureau's wiring instructions.

41.     Defendants must set aside $129,000 for use only to pay reasonable expenses to permanently cease operations of Student Loan Processing.US as set forth in Paragraph 26.  Defendants must provide to the Bureau a detailed accounting of how such funds were used within 7 days after operations of Student Loan Processing.US are ceased, and again after existing rent obligations for Student Loan Processing.US are satisfied.  If Defendants do not incur reasonable expenses amounting to the full $129,000 to permanently cease operations and to satisfy the existing rent obligations of Student Loan Processing.US, the remaining balance must be paid to the Bureau as a civil money penalty in addition to the $1 required under Paragraph 40.  In addition, if the Bureau makes a determination that any portion of the $129,000 was not expended in a reasonable manner, the Bureau shall be entitled to demand payment of that portion of the $129,000 as a civil money penalty in addition to the $1 required under Paragraph 40.

42.     Within 10 days after the Bureau has indicated that it has completed its review of the accounting specified in Paragraph 41, Defendants must pay any unused portion of the $129,000 that was set aside to cease operations, as well as any amounts determined not to have been expended in a reasonable manner, by wire transfer to the Bureau or the Bureau's agent in compliance with the Bureau's wiring instructions.

43.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

44.     Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order.

b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

45.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset).  If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within 30 calendar days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury.  Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

46.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).  For such purposes, this Order will have collateral estoppel effect against Krause, even in Krause's capacity as debtor-in-possession.

47.     The civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and thus, as to Krause, is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

**E. OTHER MONETARY PROVISIONS**

**IT IS FURTHER ORDERED** that:

48.     In the event of any default on Defendants' obligations to make payment under this Final Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

49.     Defendants must relinquish all dominion, control, and title to the funds paid under this Final Order to the fullest extent permitted by law, and no part of the funds may be returned to Defendants.

50.     Under 31 U.S.C. § 7701, Defendants, unless they already have done so, must furnish to the Bureau their taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Final Order.

51.     Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

52.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the Bureau of the final judgment, consent order, or settlement in writing.  That notification must indicate the amount of redress, if any, that Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## F.  REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

53.     Each Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Final Order, including but not limited to, the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Final Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in

Defendants' names or addresses.  Each Defendant must provide this notice, if practicable, at least 30 calendar days before the development but in any case no later than 14 days after the development.

54.     Within 10 days of the Effective Date, each Defendant must:

a.     Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with each Defendant;

b.     Identify all businesses for which each Defendant is the majority owner, or that each Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c.     Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d.     Identify Krause's telephone numbers and all email, Internet, physical, and postal addresses, including all residences; and

e.     Describe in detail Krause's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Krause's title, role, responsibilities, participation, authority, control, and ownership.

55.     Each Defendant must report any change in the information required to be submitted under this Section at least 30 calendar days before the change or as soon as practicable after the learning about the change, whichever is sooner.

## G. ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

56.     Within 10 days of the Effective Date, Student Loan Processing.US and Krause, for any business for which either/both is the majority owner or which either/both directly or indirectly controls, must deliver a copy of this Final Order to

each of its executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of this Final Order.

57.     Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Final Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Final Order under this Section.

## H. RECORDKEEPING

**IT IS FURTHER ORDERED** that:

58.     Defendants must retain, for at least 5 years from the Effective Date, the following business records:

     a.   All documents and records necessary to demonstrate full compliance with each provision of this Final Order, including all submissions to the Bureau;

     b.   Copies of all sale scripts, training materials, advertisements; websites, and other marketing materials related to Defendants' Student Loan Services;

     c.   Records showing, for each individual Affected Consumer who enrolled in Defendants' Student Loan Services:  the consumer's name, address, phone number, email address, amount paid, quantity of Student Loan Services purchased, description of the Student Loan Services purchased, the date on which the Student Loan Services were purchased, and if applicable, the date and reason consumer left the program;

     d.   For Defendants' Student Loan Services, accounting records showing the gross and net revenues generated by the Student Loan Services;

e.   All consumer complaints and refund requests related to Defendants' Student Loan Services and any responses to those complaints or requests; and

f.   Records showing, for each employee who provided services related to Defendants' Student Loan Services:  the employee's name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

59.   Defendant must make the documents identified in this Section available to the Bureau upon the Bureau's request.  Retention of the documents may be in an electronic form.

60.   Defendants must not sell or transfer the documents identified in this Section to any other person or entity, except that nothing in this Paragraph shall prohibit or limit Defendants from supplying this information in response to a court order or request from a local, state, or federal government entity.  Defendants must also not use the documents identified in this Section for any purpose other than for compliance with this Final Order.

## I.  COOPERATION WITH THE BUREAU

61.   Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer.  Defendants must provide such information in its or its agents' possession or control within 14 days of receiving a written request from the Bureau.

62.   Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Defendants must appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days

written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## J.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Final Order:

63.    Within 14 days of receipt of a written request from the Bureau, unless the Bureau grants a further extension of time, each Defendant must submit additional compliance reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; and produce documents.

64.    For matters concerning this Final Order, the Bureau is authorized by this Final Order to communicate directly with each Defendant, including Krause, unless Defendant has retained counsel related to these communications.

65.    Nothing in this Final Order limits the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## K. NOTICES

**IT IS FURTHER ORDERED:**

66.    Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Final Order in writing, with the subject line, *CFPB v. IrvineWebWorks, Inc. d/b/a Student Loan Processing.US*, Case No. 8:14-cv-1967 (C.D. Cal.), and send them either:

a.  By overnight courier (not the U.S. Postal Service), as follows:

Assistant Deputy Enforcement Director

Consumer Financial Protection Bureau

ATTENTION: Office of Enforcement

1625 Eye Street, N.W.

Washington D.C. 20006; or

b.  By first-class mail to the below address and contemporaneously
by email to Enforcement_Compliance@cfpb.gov:

Assistant Deputy Enforcement Director

Consumer Financial Protection Bureau

ATTENTION: Office of Enforcement

1700 G Street, N.W.

Washington D.C. 20552

**L.** **RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that:

67.    This Court retains jurisdiction of this matter for purposes of
construction, modification, and enforcement of this Final Order.

**IT IS SO ORDERED.**

Dated this 15th day of March, 2016.

_____

United States District Judge

# Exhibit A

March [date], 2016

# IMPORTANT NOTICE
# TO STUDENT LOAN PROCESSING.US CUSTOMERS

On December 11, 2014, the Consumer Financial Protection Bureau (Bureau) – a federal government agency headquartered in Washington, D.C. – filed a lawsuit against IrvineWebWorks, Inc. d/b/a Student Loan Processing.US (SLP) and SLP's president and owner, James Krause.  In that lawsuit, the Bureau alleged that SLP and Krause charged consumers illegal upfront fees, deceived consumers about the costs of their services, and falsely represented an affiliation with the U.S. Department of Education, in violation of federal consumer financial laws.  On [Insert Date], 2016, SLP and the Bureau reached a settlement and jointly asked the Court to enter a Final Order by which SLP is to permanently shut down, provide the Bureau with funds for partial refunds to consumers, and pay a fine.  The Court entered that Final Order on [Insert Date].

**RELIEF FOR CUSTOMERS OF STUDENT LOAN PROCESSING.US:**

You will likely receive a refund of at least some of the fees you paid to SLP, unless you have already received a full refund.  The Bureau will contact you when there is further information to share regarding the availability, status, and amount of refunds.  In addition, any contract you entered with SLP is now cancelled, and SLP will no longer be charging you a monthly fee.

Since SLP is shutting down all of its operation by [Insert Date], SLP will no longer provide any services related to your federal student loan after that date.  Therefore, after [Insert Date] SLP will no longer assist you with the annual recertification requirements to maintain your enrollment in U.S. Department of Education repayment programs.  If you are (or may be) enrolled in an income-driven repayment plan for your federal student loans, this settlement **will not** cause your monthly payment to increase, as long as you comply with the terms of enrollment.  Income-driven repayment plans are available for free to student loan borrowers under federal law.

We urge you to read this letter carefully, and to **immediately** follow the steps outlined below.

**WHAT YOU NEED TO DO IN RESPONSE TO THIS NOTICE:**

- **First**, contact your federal student loan servicer – SLP is not your servicer – to ensure that the address, email, and phone number on file with your servicer is correct.  This will ensure communications regarding your federal student loans come directly to you, rather than to SLP, and will ensure that you do not miss important information about your loans.  If you do not know your federal student loan servicer, please contact the U.S. Department of Education at 800.4.FEDAID (800.433.3243) to get that information.

- **Second**, if you are (or may be) enrolled in an income-driven repayment plan for your federal student loans, you need to recertify your income and family size annually to remain enrolled in the plan.  Please call your federal student loan servicer and confirm (a) whether you are enrolled in an income-driven repayment program, and (b) if so, the date by which you must recertify your income and family size to remain enrolled.  Your servicer can tell you how to recertify on www.studentloans.gov.

If you have any questions about this letter, the lawsuit, or the Final Order, please contact the Bureau at students@cfpb.gov.

# FREQUENTLY ASKED QUESTIONS

## 1. Wasn't SLP my servicer?  Who is my federal student loan servicer?

SLP is not a loan servicer and has no affiliation with the U.S. Department of Education.  Any payments you made to SLP were not payments towards your federal student loan, but were fees kept by SLP.  If you have questions about your payment history, you should contact your servicer directly.

Your student loan servicer is a company that contracts with the U.S. Department of Education and handles the billing and other services on your federal student loan, including loans for the William D. Ford Federal Direct Loan Program and for some older loans made by private lenders and guaranteed by the Department of Education (known as Federal Family Education Loans or FFEL).  U.S. Department of Education loan servicers include companies such as Navient, Nelnet, MOHELA, Great Lakes Educational Loan Services, Inc., and FedLoan Servicing (PHEAA).

If you do not know your federal student loan servicer, please contact the U.S. Department of Education at 800.4.FEDAID (800.433.3243) to get that information.

## 2. What happens to the Service Agreement I executed with SLP?

Your Service Agreement and any other contracts that you signed with SLP (including the Limited Power of Attorney and Permission Letter) are now cancelled.  You will no longer be charged any fee by SLP, including the monthly fee of at least $39 per month.  SLP will continue to prepare, process, and mail to the U.S. Department of Education any paperwork necessary to maintain enrollment in repayment programs only until [Insert Date], and otherwise will no longer be providing any services.

## 3. Will I receive a refund of any of the fees that I paid to SLP?

Unless you have already received a full refund, you will likely receive a refund of at least some of the fees you paid to SLP.  At this time we cannot determine the exact amount of the refund, nor can we provide the precise date when you will receive that refund.  The Bureau will contact you when there is further information to share regarding the availability, status, and amount of refunds.

## 4. Do I need to do anything in response to this notice?

You should contact your federal student loan servicer to update the contact information you have on file with your servicer.  You may also need to recertify your income and family size to remain enrolled in certain federal student loan repayment plans, including income-driven repayment plans.  We encourage you to contact your servicer as soon as possible for more information and to ensure that you are enrolled in the repayment plan that's best for your individual circumstances.

If you have any questions about your federal student loan and the repayment options that may be available to you, ask your federal student loan servicer or consult StudentAid.gov/repay, a U.S. Department of Education website.  Please be aware that there are numerous free services to help you understand the terms, conditions, and options regarding your federal student loans.